[Civ. No. 14499. Second Dist., Div. Two. Jan. 12, 1945.]

RUBY CARTER et al., Appellants, v. CITY OF LOS ANGELES et al., Respondents.

Jerrell Babb for Appellants.

Ray L. Chesebro, City Attorney, S. B. Robinson, Chief Assistant City Attorney, Mark A. Hall, Assistant City Attorney, George William Adams, A. L. Lawson and Wendell Mackay, Deputies City Attorney, for Respondents.

WOOD (W. J.), J.—The petitioners, Ruby Carter and Elizabeth A. Baltes, have appealed from a judgment against them in a mandatory proceeding wherein they seek to be restored to their positions as civil service employees in the Department of Water and Power of the city of Los Angeles and to recover their salaries from the date on which they were suspended from their positions, December 31, 1940. The respondents are the city of Los Angeles, the Department of Water and Power of the city, the Board of Civil Service Commissioners of the city and the controller and the treasurer. Appellants allege that they were improperly removed from their positions as field collectors in the department upon the unfounded charge that there was a lack of work.

Appellants now contend that at the time of their discharge they were actually performing field collection work and work related thereto in accordance with the outlined duties set forth in the notice of the civil service examination for field collector which they took and successfully passed; that there has been no lack of work in the position they held but that since their discharge the positions have been occupied by two women having a classification different from that of appellants.

During 1939 and 1940 a survey was made by respondent commission for the purpose of improving the efficiency of the civil service system of the city. As a result of the survey the various duties that had been performed by those holding the position of field collector were separated into two classes, the number of field collectors was decreased and the work which had been performed by appellant Baltes was assigned to an employee having the classification of general clerk and the work which had been performed by appellant Carter was

assigned · to an employee having the classification of junior clerk typist. The position of respondents is shown by the following quotation from their brief: "The respondents agree that the reclassification of a position cannot effect the removal therefrom of a civil service employee who has qualified for such position through examination. An employee loses none of his prior rights to a position because of its reclassification, nor does he gain any rights thereby. But this is not the problem which is involved in this appeal. In this case the appellants had never been examined for the respective positions which they occupied. They were not removed therefrom because of any claim that such positions had been reclassified. On the contrary, they were removed therefrom because they had never qualified by examination to perform the duties of such positions."

Respondents presented as witnesses several experts in civil service matters who testified that in their opinion appellants were not doing the work of field collectors. When their testimony was completed the trial court recalled them and propounded questions which were answered over the objection of appellants. These unusual rulings call for a reversal of the judgment. One of respondents' witnesses, Louis P. Smeltzer, testified that he had been an employee of the Department of Water and Power since 1933, his duties being to direct all matters concerning "the removal or suspension or discharge or transfer" of civil service employees. The record discloses: "Q. By the Court: Mr. Smeltzer, you have testified as a civil service expert, will you tell the court whether or not, in your opinion, the suspension of the petitioners was according to the rules and accepted procedure of civil service? A. The lay off, the suspension of the two petitioners along with others that took place at that same time, is directly in accordance with the regulations provided by Section 125 of the City Charter, and the Civil Service rules as brought up thereunder. Q. Have you studied and given consideration as a civil service expert to the proceedings of the commercial division, Water and Power Department, Civil Service Commission, to determine whether, in your opinion as an expert, the proceedings by which the petitioners were suspended December 31st, 1940, was in any respect a violation of accepted principles of civil service? A. After carefully investigating the various factors that led up to laying off of petitioners, it is my belief that there are no grounds for which a violation of civil service

principles of a fair, free field and no favor, can be based. In other words, were not only the procedure ordered by civil service carried out, but in our carrying them out, no favors or prejudices were assessed against any of the group of employees who were liable to lay off, namely, those in the class group of field collectors.''

One of the other expert witnesses, Charles Steven, testified that he was director of the Personnel Commission of the Los Angeles city schools. The record discloses the following: ''Q. By the Court: Mr. Steven, you have testified as an expert as a civil service worker in the field personnel since 1909, have you studied the question whether these young women were in any way unfairly treated in the order of lay off? A. I have. Q. What is your answer? A. They were not unfairly treated. Mr. Babb: The answer came so fast I didn't get a chance to object. I move the answer be stricken so I may object. The Court: The answer is stricken for the purpose of objection. Mr. Babb: I object to that question on the ground that the witness hasn't qualified himself to give a proper answer, he not having shown, for the purpose of the record or otherwise, that he has made an investigation inquiring into the unfairness or fairness of the matter, he merely qualified himself as an expert here by stating what he had done in past years, and not one word of evidence has come into this case as to what investigation he did make. The question is calling for a decision on a question of law, calling for a conclusion of facts which are not in evidence. The Court: That is your objection? Mr. Babb: And the witness hasn't stated sufficient qualifications to entitle him to give such an answer. The Court: Objection overruled. Motion to strike is denied, the answer is reinstated. That is all I wanted to ask. I wanted your opinion as an expert, a man I know quite well to be an honest worker. Mr. Babb: I don't doubt that. Cross-examination. By Mr. Babb: Q. You said you investigated this matter to determine whether or not these employees had been unfairly treated? A. Yes. Q. Now just tell us what investigation you made on that? A. Besides what I have mentioned before, I have been quite a constant attendant in this court for several days, heard the arguments of the attorneys and heard the testimony of Mr. Smeltzer and others, and I think I have quite a comprehensive view of the issues in this case from attendance in this court. Q. Have you ever interro-

gated these plaintiffs in your investigation? A. I have not. Q. Have you interrogated anybody in this investigation you mentioned? A. Yes. Q. Who did you interrogate? A. I interrogated Mr. Smeltzer, Mr. Fisher, Mr. Mackey, Mr. Lawson, the people in my office whom I talked this over with, my classification technician, my junior research assistant—— Q. Did the people in you office know the facts of the plaintiffs' case themselves, beyond your say? A. Yes, we had copies of their complete civil service record, with the Water and Power Commission. Q. I believe you stated that you have not discussed the matter at all with the plaintiffs? A. I have not. Q. So then you are basing your answer upon—— primarily you are basing your answer upon what you have heard here in the court room, is that right? A. It would be a little hard to evaluate it at the moment; I think from what I studied in the records, what I discussed with my office staff, are very essential parts in making up my mind.''

It is not contended by respondents that the trial court could properly refer the decision of the ultimate issues to an expert even though he be one whom the court knew quite well as an honest worker. But if by chance such a contention should be made it would be unavailing for in addition to the general rule that the court must decide the ultimate facts, the witness Steven did not claim to have heard all of the evidence, especially that bearing on the discharge of Gordon Rogers and the views of the Division Head concerning the employment of women as field collectors, hereinafter alluded to. On the other hand the witness stated that he had not interrogated appellants. He stated that he based his answers in part upon his discussion with his own office staff, including his ''junior research assistant.'' Conceding, without deciding, that expert testimony was proper on any of the issues before the court in the present proceeding, it is thoroughly established that experts may not give opinions on matters which are essentially within the province of the court to decide. (*Morgan* v. *Myers*, 159 Cal. 187 [113 P. 153]; 10 Cal.Jur. 953 and cases there cited.) It is apparent that the court, in asking the experts whether the suspension of appellants was in accordance with accepted principles of civil service and whether appellants were fairly treated, was shifting the responsibility of deciding the issues before the court from its own shoulders to those of the expert witnesses.

We cannot agree with the contention of respondents

that notwithstanding the action of the court in propounding questions to the experts the judgment should be nevertheless affirmed, for appellants presented evidence giving substantial support to the allegations of their petition. After working for sometime as emergency employees appellants took a civil service examination for the position of field collector. In announcing the examination for field collector respondent commission prescribed the duties as follows: "Duties: Under general supervision, to route the daily collection work which consists of getting all delinquent water, light and power bills, closing bills and bills returned by the Post Office Department in street and street number order; to present such bills for collection and collect monies from consumers; to trace consumers who have moved without leaving a forwarding address; to follow up checks that have not been honored by banks; to present charity bills for verification of occupants; to obtain contracts from consumers for water and light; to make shut-offs on account of unpaid delinquent bills and to apply lock fuses to services that have been shut off; to turn in collections, bills, stubs and other records; to make out daily reports of collections; and to perform related work as required."

After an eligible list for the position of field collector had been established respondent department requested respondent commission to certify the names of two females for the position of field collector and in response to this request respondent commission certified the names of appellants. On and after November 6, 1936, appellants were employed pursuant to certification as field collectors in the commercial division of respondent department.

During the course of the trial respondents produced in court an organization chart entitled "Commercial Division, Field Collection Activity Progress Chart showing source and kind of material, checking material, and distribution of material to field collectors." The chart divided the work of the field collection activity into three parts, namely: 1. Source and kind of material accumulated in special collection unit during the day. 2. Checking of corresponding account by bookkeeping unit during that night. 3. Distribution of Collection Material to field collection unit the next day. The first part mentioned on the chart is divided into eight parts, namely: 1. Closing bills. 2. Delinquent regular bills. 3. Bills previously sent to field. 4. Three star and special bills. 5. B.C.

and I.C. bills. 6. E.H. F.H. bills. 7. Notice to Guarantee. 8. N.G. checks. Appellants were assigned to perform work embraced within the title in the first division of the chart, namely, source and kind of matter accumulated in special collection unit during the day. The unit to which they were assigned was called by the head of the division the "special collection unit." Each of appellants testified concerning the work she performed and the number of hours given to each particular task. From their testimony it could be reasonably concluded that they were performing services as field collectors, a position which included both office work and outside work. Indeed, at the time of the trial it was shown by witnesses for respondents that, notwithstanding the division of the work into office work and field work, some of those who at the time of the trial were holding the position of field collector were in fact doing office work, due to the shortage of man power.

The witness Gordon Rogers testified that he was laid off from the position of field collector on February 21, 1941, and that prior to that time he had held the position for approximately eight years and had had seniority over appellants; that during most of his time he was doing office work; that Mr. White, head of the division, had threatened to lay him off and told him that he would dispose of him one way or the other, even if he had to lay off other people who were below him in seniority in order to reach the witness. Mr. White admitted that he wanted men and not women in the position of field collector. The weight of these matters, as affecting the good faith of respondent department, was for the consideration of the court and not for the experts. It was not shown that the experts had any knowledge of this evidence.

There was not at the time of the suspension of appellants or at the time of the trial a lack of work in the collection activities of respondent department, the claim being merely that there was a lack of work "in class." The reclassification of positions following the survey in 1940 cannot justify the removal of appellants from a position which they obtained after civil service examination. The question whether they did in fact obtain such a position should have been determined by the trial court and not by expert witnesses.

The judgment is reversed.

Moore, P. J., and McComb, J., concurred.