[L. A. No. 20289. In Bank. Jan. 20, 1948.]

RUBY CARTER et al., Appellants, v. CITY OF LOS ANGELES et al., Respondents.

Jerrell Babb for Appellants.

Ray L. Chesebro, City Attorney, Gilmore Tillman, Chief Assistant City Attorney, A. L. Lawson and Wendell Mackay, Deputy City Attorneys, for Respondents.

SHENK, J.—The petitioners were classified civil service employees in the Department of Water and Power of the city of Los Angeles. They have appealed from an adverse judgment in a mandamus proceeding wherein they sought reinstatement to their positions as field collectors, with the payment of salary from December 31, 1940, the date of their alleged wrongful suspension. The respondents defended in the proceeding on the grounds that the appointment of the petitioners to the positions they occupied was not in conformity with the provisions of the state Constitution and the charter of the city of Los Angeles and was therefore illegal; and that their suspension on the ground of lack of work in class was in accordance with the provisions of the charter, therefore regular and valid. A contention is also made by the respondents that the petitioners have not complied with the charter requirements for the filing of a demand for reinstatement and a claim for compensation.

This is the second appeal in the proceeding: On the first appeal a judgment, likewise for the respondents, was reversed

and the case remanded for further trial. (*Carter* v. *City of Los Angeles*, 67 Cal.App.2d 524 [154 P.2d 907].) Thereafter pursuant to stipulation the respondents filed an amended answer. After trial the court made findings of fact and concluded that the certification and appointment of the petitioners to the position of field collector were contrary to law and that each of the petitioners was unlawfully employed by the Department of Water and Power; also that each was laid off in accordance with the provisions of the city charter, and was not entitled to reinstatement or to the recovery of compensation.

The petition herein was filed on November 7, 1942. It was alleged therein, and found by the court, that demand and claim were filed on March 10, 1941, which was within 90 days from December 31, 1940, the effective date of suspension. The suspensions were sustained by the Board of Civil Service Commissioners on July 7, 1941. No further claim or demand was filed.

Section 112½ of the charter of the city of Los Angeles requires that demand for reinstatement be filed with the Board of Civil Service Commissioners, and that claim for compensation be filed with the city clerk, "within ninety days following the date on which it is claimed that such person was first illegally, wrongfully or invalidly laid off, suspended or discharged." Failure to file such demand and claim within the stated time is made a bar to any subsequent action for judicial relief.

No contention was made on either trial, or on the former appeal (decided January 12, 1945) that the foregoing requirements of the charter were not complied with. That contention is made for the first time on the present appeal and is based on the decisions in *Steen* v. *Board of Civil Service Commissioners*, 26 Cal.2d 716 [160 P.2d 816], decided in June, 1945, and *Tennant* v. *Civil Service Commission*, 77 Cal.App. 2d 489 [175 P.2d 568], decided December 31, 1946. (The judgment from which the present appeal is taken was rendered on January 7, 1946.)

In the Steen case it was held that the filing of the demand for reinstatement and the claim for compensation within 90 days from the date of sustaining the order of discharge (although more than 90 days from the effective date of suspension or discharge pursuant to the notice served on the employee), was in compliance with the provisions of section

112½ of the charter. In the Tennant case, the District Court of Appeal in applying that holding arrived at the conclusion that the filing of demand and claim within 90 days of service of notice and effective discharge, but before the final action of the board in sustaining the discharge, was premature and ineffective.

In the present proceeding, as in the Tennant case, there was not an entire failure to file a demand and claim. (See *Johnson* v. *County of Fresno*, 64 Cal.App.2d 576 [149 P.2d 38] ; cf. *Farrell* v. *County of Placer*, 23 Cal.2d 624 [145 P.2d 570, 153 A.L.R. 323].) Suitable demands and claims, as the court found, were filed on March 10, 1941, and it may be assumed continued to remain on file during and after the investigation and final action sustaining the suspensions, and are still on file. The respondents' contention purports to present to this court the question whether the decision in the Tennant case was proper. It may be noted that the result in that case is sustainable on another ground, namely, that the petitioner therein was guilty of laches in seeking judicial relief. In the present proceeding, however, because the appeal must be disposed of adversely to the petitioners on other grounds, we deem it unnecessary to pass upon the question of the timeliness of the filing of their demands and claims.

The principal contention of the petitioners on this appeal is that the trial court's conclusions are unsupported by the findings or the evidence; therefore that their suspension was arbitrary, capricious and unlawful.

The record shows the following:

The petitioners commenced their employment in the commercial division of the Department of Water and Power of the city of Los Angeles in 1933 under temporary emergency appointments without civil service examination, and continued to be employed in the same division until the time of their suspension. The petitioner Baltes received emergency appointments as information assistant on September 29, 1933; as field collector on August 23, 1934; as clerk-typist on July 31, 1936; and as typist on September 1, 1936. The petitioner Carter received emergency appointments as information assistant on December 6, 1933; as field collector on August 31, 1934; as typist on January 1, 1936; and as general clerk-typist on July 31, 1936. About January 30, 1936, a bulletin was posted announcing an examination to be given in the civil service class of field collector in the Department of Water and

Power with a monthly salary range of $135 to $190. The announcement specified the qualifications of applicants as minimum age 21 years, education equivalent to high school, one year of experience as collector, credit man, clerk, or employee engaged in meeting and dealing with the general public, thorough knowledge of the geography of the city of Los Angeles, firmness and tact, good address and good physical condition. The duties specified were, under general supervision, to route the daily collection work (arranging the delinquent, closing and returned bills in street and number order); to present bills for collection to and collect monies from consumers; to trace consumers who moved; to follow up unhonored checks; to present charity bills for verification of occupants; to obtain contracts from consumers for water and light; to make shut-offs on account of unpaid bills and apply lock fuses to services shut off; to turn in collections, bills, etc.; to make daily reports of collections; and to perform related work as required. The test was in writing and by personal interview to determine the qualifications.

The petitioners took the test on February 15, 1936, and passed both branches. On May 14, 1936, the Civil Service Commission established an eligible list of 398 persons in the class of field collector, including three women, one in addition to the petitioners. The petitioners were number 76 (Baltes) and 216 (Carter) on the list. Shortly prior to November 6, 1936, the Department of Water and Power requested the Board of Civil Service Commissioners for certification of two women from the list of eligibles for the position of field collector. On November 6th, the board certified the names of the only three women on the list. The petitioners were appointed to the position of field collector at a salary of $135 per month, and they continued at their desks in the commercial division at the same salary until suspension. At the time of their appointment the last person regularly certified and appointed as field collector was number 28 on the eligible list.

Admittedly the petitioners did only desk work up to the time of their suspension. Both men and women performed clerical duties in the commercial division in various classes. The petitioners did work which was common to all classes employed at desk work in the division; but there is evidence that some duties performed by the petitioners were not discharged by others, such as preparing letters for collection through the

mail or attempting collections by telephone before they were followed up in the field, and processing for the next step after field attempts failed. The trial court found that from the time of their appointment on November 6, 1936, duties performed by the petitioners applied to the class of field collector; also that their duties were not such as could only be properly, efficiently, reasonably or satisfactorily performed by a female person, but, on the contrary, that the duties of the position at all times could have been performed properly, efficiently, reasonably and satisfactorily by either men or women. The record supports the foregoing findings.

██ Section 18 of article XX of the California Constitution reads: ''No person shall, on account of sex, be disqualified from entering upon or pursuing any lawful business, vocation, or profession.'' Section 424 of the charter of the city of Los Angeles provides: ''In the employment of persons in the service of the city, where sex does not actually disqualify and where the quality and quantity of service is equal, there shall be no discrimination in selection or compensation, on account of sex.'' Section 109 of the charter requires the head of a department in which one or more classified positions are to be filled, to notify the Board of Civil Service Commissioners, which is then required to certify for each position the names of not more than three candidates who stand highest on the eligible list. The section also provides: ''In making such certifications, sex shall be disregarded, except when some statute, the rules of said board, or the appointing power specify sex.''

The petitioners rely on the last six words quoted to support the legality of their appointment out of the prescribed order. They refer to the fact that in the request for certification the appointing power specified sex, namely women. However, conformance with the antidiscrimination clauses of the Constitution and the charter was equally obligatory upon the appointing power. The appointing power had no authority to request certification of women under the facts and circumstances presented by the record and found by the court. Furthermore, if women were especially desirable in the particular duties to be assigned, there was no indication thereof in the request. The request did not state that the appointments were to be made in the commercial division or in the special collections unit thereof where the petitioners were employed. Had such statement been made, it is inferable that certifica-

tion from a different class might have followed. The request made was in violation of the provisions noted, and tainted the certification with the same illegality. From the record it is clear that the petitioners should not, and in fact they do not, claim that they were unaware of their appointment out of regular order. The evidence supports the trial court's findings and conclusions on this ground of the respondents' defense.

But, the petitioners assert, the foregoing was not made an express ground of the cause for suspension, nor was that ground of defense asserted until the filing of the amended answer prior to the second trial. Assuming the truth of these assertions, there is no necessity to prolong the discussion in order to determine what, if any, favorable advantage might thereby ensue to the petitioners, since there is also support in the record for the trial court's conclusion that the petitioners were duly and regularly laid off for the cause stated in the notice of suspension.

During the years 1939 and 1940, a resurvey was made of the civil service classifications in the Department of Water and Power, and of the duties assigned to each. In October, 1939, during this survey and in response to request, each of the petitioners made a detailed report (introduced in evidence by her) of the duties assigned to and performed by her, and each stated that her enumerated duties remained substantially the same for approximately the preceding five years. Beginning January 1, 1940, the regular monthly salary of field collector was $175 (and from September 1, 1942, to March 5, 1944, $195; from March 6, 1944, to March 31, 1945, $200; from April 1, 1945, to October 16, 1945, $220). In 1940, the field collection work was redesigned, changes were made in the procedure for collection, and the amount of work in the class was thereby reduced. As a result of the changes and reduction of work, 16 lay-offs occurred between October 31, 1940, and February 21, 1941. The petitioners were 13th and 14th on the lay-off list. The suspensions were based on "lack of work in the class, in accordance with Section 125 of the City Charter," and the notices received by the petitioners, effective December 31, 1940, so stated. Lay-offs were made in the inverse order of seniority, and two men laid off after December 31, 1940, had seniority in the class over the petitioners.

Subsequent to the petitioners' suspension, the duties for-

merly performed by the petitioner Baltes were assigned to Grace Sparks, a general clerk, and the duties theretofore performed by the petitioner Carter were assigned to Teresa Towles, junior clerk typist, each of whom was regularly employed in the commercial division in the indicated classes at the time of the petitioners' suspension, and each continued to perform those duties in her respective class thereafter.

Section 112(a) of the charter of the city of Los Angeles provides that no person employed in the classified civil service of the city shall be removed, discharged or suspended except for cause which shall be stated in writing and filed with the Board of Civil Service Commissioners together with a certificate of service thereof upon the affected employee. Section 125(a) of the charter empowers the Board of Civil Service Commissioners to provide by its rules for the manner and order of suspension and restoration where suspension results from lack of work, lack of funds, abolishment of position, or other cause than personal delinquency. Section 125(a)(1) provides that suspension other than for personal delinquency shall be based upon seniority in the class-group, that is, that the person having the shortest length of service in the class shall be suspended first. The petitioners were not entitled to invoke the further provisions of that subdivision to the effect that a suspended person might displace a person having a shorter length of service in a class-group in which a regular position was formerly held by the suspended person. There are no facts showing that the petitioners could have established a possible line of demotion.

It is contended that although the rules relating to suspensions for lack of work in the class were technically complied with, there was in reality no lack of work in the class because the petitioners' positions were merely reclassified, and for that reason their suspension was unlawful. The petitioners point to the admitted reassignment of their duties to employees in two other classes, namely, general clerk and junior clerk typist, as evidence of the alleged arbitrary nature of their suspension. In the decision on the prior appeal (*Carter* v. *City of Los Angeles, supra,* 67 Cal.App.2d 524 at p. 530), it was said that the reclassification of positions following the survey in 1940 could not justify the removal of the petitioners from a position which they had obtained after civil service examination. The court did not however hold that the evidence required a conclusion that reclassification had taken place. The case was remanded for further trial because of

error in receiving the opinions of experts upon that question and related issues, matters which it was held were for the court and not expert witnesses to determine.

Based upon the evidence in the present record the trial court found favorably to the petitioners that the duties assigned to them were duties proper to the class of field collector. The court, however, did not find that the duties actually performed by the petitioners were not proper for performance by persons employed in the commercial division in classes other than that of field collector. In fact the evidence is to the contrary. It is unquestioned that the petitioners did not perform all of the duties which attached to the position of field collector. It may fairly be said that they performed none of the duties specified for field collector—which viewed in the aggregate were typical of work to be performed by persons operating in the field rather than exclusively at a desk—with the possible exception of the preparatory routing of bills, and the typing of daily reports. The performance of incidental clerical work, such as checking for paid and unpaid bills, writing of form letters and special letters regarding delinquent bills, handling of mail and telephone calls, filing and the like, the petitioners justified under the specification of "related work as required." But there would be no justification for a conclusion that the Department of Water and Power could not redistribute the desk duties performed by the petitioners to other classes suitable for inclusion therein in the first instance. So to do is not to reclassify the petitioners' positions.

Not every change of duties amounts to a reclassification of the position. A clear abuse of discretion must be shown. (*Otto* v. *Reardon*, 21 Cal.App.2d 260, 266 [69 P.2d 185].) No such abuse of discretion is apparent. This is not a case like *Winslow* v. *Bull*, 97 Cal.App. 516 [275 P. 974], where an employee from a lower class was *promoted* to do the work of the dismissed employee. There was not involved in that case a redistribution of duties which would have been proper, as here, and in accord with permissible power under the charter provisions. Neither is there here any charge of nonconformance with charter regulations in making the changes in the collection procedure. There was no showing of fraud or bad faith in making such changes, nor of any facts which could be translated as a torturing of the changes into a mere instrumentality to effect the discharge of an employee protected by the salutary provisions of civil service regulations. (See

*Livingstone* v. *MacGillivray*, 1 Cal.2d 546, 553 [36 P.2d 622].) Inquiry into extraneous facts merely to determine motive would not be proper. (*Kennedy* v. *State Personnel Board*, 6 Cal.2d 340 [57 P.2d 486].) Furthermore, each of the petitioners was subsequently given a temporary appointment in the class of field collector and assigned to performance of duties in the field at the higher wage scale.

The trial court's conclusion that the petitioners were regularly laid off pursuant to section 125 of the charter is supported by the findings and the evidence.

The judgment is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.