[Sac. No. 4995. In Bank.—May 1, 1936.]

ANTHONY J. KENNEDY, Petitioner, v. STATE PERSON-
NEL BOARD, etc., et al., Respondents.

Anthony J. Kennedy, *in pro. per.*, and Norris J. Burke for Petitioner.

Keith & Creede and Shreck & Morse, as *Amici Curiae* on Behalf of Petitioner.

U. S. Webb, Attorney-General, Jess Hession and Ralph H. Cowing, Deputies Attorney-General, E. H. Lindersmith and E. P. Bromley for Respondents.

Carroll S. Bucher, as *Amicus Curiae* on Behalf of Respondents.

THE COURT.—This is a petition for a writ of mandate. On October 1, 1932, petitioner was appointed attorney for the Board of Dental Examiners, under the provisions of the Dentistry Practice Act (Deering's General Laws, 1931, Act 2048, sec. 5). His position at that time was exempt from the state civil service system, by express provision of the Civil Service Act. (Deering's Gen. Laws, 1931, Act 1400, sec. 7, subd. 5.) In November, 1934, at the general election, our Constitution was amended by the adoption of article XXIV, which broadened the scope of civil service, and included within the system the position then held by petitioner. The amendment went into effect December 20, 1934.

On April 15, 1935, petitioner was dismissed from his position by the Dental Board, for reasons filed with the State Personnel Board. There is no doubt as to the power of the appointing body, the Dental Board, to dismiss its appointee, under the former law. Petitioner, however, contends that the constitutional amendment, which is self-executing by the terms of section 5a thereof, brought him under the state civil service system, and that he acquired a permanent status and was subject to removal only for good cause. On July 11, 1935, he filed this petition, seeking reinstatement and salary payments subsequent to his dismissal.

■ The validity of this contention depends upon the interpretation of two subdivisions of the amendment, under either of which petitioner claims that he acqiured his status. The first is subdivision (d) of section 5, which provides:

"All persons *other than temporary appointees heretofore serving in the state civil service* shall continue so to serve without change of class or grade of position heretofore acquired save as such class or grade may be changed by said board in the exercise of its powers herein conferred or as may be hereafter provided by law."

Petitioner argues that the term "state civil service" in this section refers simply to state employment in a civil capacity, as distinguished for example, from a military capacity. Under this view, petitioner was a "civil" employee, serving in the "state civil service," and therefore was entitled to "continue so to serve without change of class or grade of position heretofore acquired," except by a proper exercise of the power of dismissal under the rules applicable to the civil service system. But this interpretation is contrary to the usual meaning given to the term "civil service," and is manifestly opposed to the purposes of the amendment. Reference to the argument submitted to the voters shows that the provision was designed to bring numerous positions, formerly exempt, under the civil service system, and thereby to make them subject to examination and selection on the basis of merit. The term was obviously used to describe the established merit system, and not merely the "civil" character of the employment. The distinction between "civil service" employees, and "noncivil service employees" is clearly made in the above mentioned argument to voters, and it must be concluded that the proper construction of subdivision (d) excludes persons who formerly held positions exempt from the civil service system.

■ Subdivision (e) of section 5 is the other provision upon which petitioner relies. It provides:

"All persons not hereinbefore provided for in subdivision (d) hereof, holding positions subject hereto for more than six months immediately preceding the effective date hereof, shall continue to hold such positions subject to the provisions hereof save that the board in adopting rules relative to classes or grades of the position held by such person shall give each such persons such class or grade as it may deem just and such

*probationary term to commence on the effective date hereof of not less than two months nor more than eight months in the class or grade assigned as it may fix.''*

Under this provision, which seems clearly to apply to petitioner, who had served in his position for more than six months prior to the amendment, he might have become a permanent civil service employee upon uninterrupted service of his probationary term. It is equally clear that he was subject to dismissal during the period of such probationary term, for otherwise the term ''probationary'' would be meaningless, and the distinction between civil service employees with permanent status, and probationary employees with temporary status, would be obliterated. Hence the only question is whether in fact petitioner served his probationary period and obtained permanent status, or was dismissed during such period. Under the amendment, the State Personnel Board was empowered to fix the period at not less than two nor more than eight months. On June 24, 1935, six months after the amendment went into effect, the board by resolution fixed the term at eight months. It follows that petitioner was dismissed within the period of his probation, and was not entitled to the protection accorded to a civil service employee.

■ Petitioner argues, however, that assuming that he had probationary status only under subdivision (e), *supra*, he was nevertheless not dismissed within the period of his probation. The theory he advances is that when the board failed to fix the probationary period prior to the expiration of two months from the adoption of the amendment, the minimum period of two months became automatically the period of probation, and that consequently his permanent status began at that time. The answer to his argument is simply that the amendment gives the board power to fix the period within specified limitations, but does not require that it fix that period at any particular time. The board might have adopted its resolution at the time the amendment went into effect, or one month thereafter, or at any time up until the end of the eight months' maximum period. After the conclusion of such eight months' period, it would apparently be futile to fix the same. But the amendment does not in terms place any other limitations on the board's power to act, and we are unable to see how any such limitation as is proposed can be implied.

The only remaining contention of petitioner which requires mention is that his dismissal was for improper motives. In this connection he alleges that his services were declared to be satisfactory by the Dental Board in a resolution adopted at the time of his dismissal, and that subsequently another resolution was passed charging him with unsatisfactory conduct and improper political activity. In our opinion these allegations do not present an appropriate case for judicial review. There is no sufficient affirmative showing of fraud or bad faith on the part of the board, and it has been a recognized rule that an inquiry into extraneous facts to determine the possible improper motive of an executive or administrative board in dismissing an employee is not justified. (See *Livingstone* v. *MacGillivray,* 1 Cal. (2d) 546 [36 Pac. (2d) 622] ; *State* v. *Kennelly,* 75 Conn. 704 [55 Atl. 555].)

The alternative writ of mandate heretofore issued is discharged, a peremptory writ is denied.

Rehearing denied.