[S.F. No. 22805. In Bank. Feb. 9, 1972.]

CHRISTO TOM BEKIARIS, Plaintiff and Appellant, v.
BOARD OF EDUCATION OF THE CITY OF MODESTO,
Defendant and Respondent.

576

## Counsel

Levy & Van Bourg, Victor J. Van Bourg and Stewart Weinberg for Plaintiff and Appellant.

Paul N. Halvonik and Charles C. Marson as Amici Curiae on behalf of Plaintiff and Appellant.

T. W. Martz, County Counsel, Jonathan H. Rowell, Assistant County Counsel, John F. Christensen and Harry P. Drabkin, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**SULLIVAN, J.**—Plaintiff Christo Tom Bekiaris (hereinafter referred to as petitioner) appeals from a judgment denying a writ of mandate to compel defendant Board of Education of the City of Modesto (Board) to set aside his allegedly wrongful dismissal from employment and to reimburse him for damages suffered by reason of lost employment. For the reasons explained below we hold that the judgment must be reversed because the trial court and the Board failed to resolve petitioner's contention that the true reason for his dismissal was the Board's disapproval of his exercise of First Amendment rights through out-of-school political activities.

Petitioner, a probationary teacher at Thomas Downey High School in Modesto, was originally hired for the 1967-1968 school year, and was rehired for the following year. However, on March 4, 1969, petitioner received notice of the recommendation that his employment not be continued for the 1969-1970 school year. Pursuant to Education Code section 13443,[1] he requested a hearing in the matter, and, on March 10, 1969, was served with an accusation[2] and notice of hearing.

---

[1]Section 13443 of the Education Code specifies the procedure to be followed in reaching a determination not to rehire a probationary teacher. At the time of the administrative proceedings in this case, section 13443 required the district superintendent or his designee to give the school board and the teacher written notice on or before March 15 of the recommendation that the teacher not be rehired for the following year. The teacher was then given at least seven days within which to make a written request for a hearing before the governing board to determine if there were cause for not reemploying him. Any such hearing was required to be conducted and the decision made in accordance with relevant provisions of the Administrative Procedure Act (Gov. Code, § 11500 et seq.), except that the teacher had to file any notice of defense within five days after he had been served with the accusation. Section 13443 required that the hearing should commence on or before April 15, and that if the hearing were before a hearing officer alone, he should prepare the proposed decision and submit it to the school board on or before May 1. The school board's determination of the sufficiency of cause for refusing to reemploy was conclusive, but the cause was required to relate solely to the welfare of the schools and the pupils thereof.

Section 13443 was added to the Education Code by Statutes 1965, chapter 1110, section 2, page 2755. At that time both former section 13443 and section 13444 were repealed. (See Stats. 1965, ch. 1110, § 1, p. 2755 and § 3, p. 2756.) Former section 13444 covered the same subject matter now covered by section 13443.

Hereafter, unless otherwise indicated, all section references are to the Education Code.

[2]As set forth in petitioner's brief, and not contradicted by the Board, the accusation served on petitioner contained the following charges:

"1) Persistent violations of and refusal to obey school regulations and instructions to teachers, including:

"Failure to respond to direction to prepare and supply course outline (October, 1968).

The hearing was held on April 7, 1969, before a hearing officer provided by the state Office of Administrative Procedure. At the hearing two witnesses testified in support of the accusation against petitioner. Evelyn Hanshaw, the director of curriculum, stated that in September 1968 she had requested petitioner to supply her with a course outline. She said that petitioner had responded by submitting a copy of a course outline used in prior years which she had sent him as an example of a course outline. To this outline, petitioner had appended a list of film strips which had been prepared by another teacher for a summer school program. By contrast, Mrs. Hanshaw indicated, a team of instructors teaching the same course had submitted a very lengthy and detailed course outline. However, on cross-examination, Mrs. Hanshaw stated that she had never told petitioner that she thought his outline was inadequate.

Hazel Gotshall, the assistant principal in charge of instruction, stated that on three occasions she had visited petitioner's classroom. On each occasion she found that petitioner conducted the class primarily as a lecture session, that there was little student participation, that the students had not been properly prepared for the class, and that the material covered was too advanced for the "Y-E", or low-average students composing the class. Mrs. Gotshall testified that after each visit she spoke to petitioner and advised him of the inadequacies of his teaching methods. She also stated that during the 1967-1968 school year, petitioner had been one of three instructors team-teaching a government-in-action course, that there had been dissension among the members of the team, and that, in

"Failure to follow prescribed course of study (1968-1969).

"2) Lack of proper presentation of course subject matter.

"Teaching material for 'top' class (X) taught at 'average' class (Y) level (Fall-1968).

"Lecture, or 'teacher-telling' method of teaching used, without preparation of students for involvment in discussion (observed September 25, 1968; October 10, 1968; January 9, 1969).

"Classes used as platform for presentation of personal views (such as on use of marijuana, consensual homosexuality, as a crime, legal suppression of 'obscenity') instead of taking unbiased and broad approach and thus developing student inquiry (observed January 9, 1969).

"3) Failure to cooperate with department head, supervisor of instruction, fellow teachers.

"Failure to consult with department head as to new teaching areas and subjects (Fall-1968).

"Inability, or refusal, to cooperate in 'team teaching' program, requiring separation therefrom (first year—1967-1968).

"Demand for advance notice of, and right to have witness present, at conferences with school administration (January 20, 1969).

"Threats to 'drag others through the mud' if school authorities sought dismissal (January, 1969)."

an attempt to improve the situation, petitioner, the junior teacher, had been taken off the team. Thereafter, the team functioned more smoothly.

On cross-examination, Mrs. Gotshall stated that she had evaluated petitioner's performance twice during the 1967-1968 school year; the first time, she had rated him as a "good" teacher; the second time, as "satisfactory." Mrs. Gotshall also testified that she felt that petitioner had indicated his personal views to the class on several controversial social issues, such as homosexuality. She said that she had raised several questions as to these views during the classes she visited.

Petitioner presented several witnesses to rebut the charges of the accusation. Two of petitioner's former students testified about the visits of Mrs. Gotshall to their classes. They stated that toward the end of the class period, Mrs. Gotshall had begun questioning petitioner in a derogatory manner which petitioner and the class found disconcerting. Ed Maurice, another teacher with a class including "Y" students, stated that he had used some materials which Mrs. Gotshall found too advanced for petitioner's "Y" students. Robert Jackson, an instructor team-teaching government in action, testified that petitioner had not been responsible for the dissension which had developed on the team in the 1967-1968 school year, but that such dissension had been caused by the differing political views held by the other members of the team.

In his own testimony, petitioner denied the charges of the accusation, and confirmed the testimony of the other witnesses in his behalf. Petitioner admitted that he had requested the opportunity to have a witness present at meetings with the school administration, but stated that he thought he had a legal right to do so, and that, in any event, no one had ever objected to his request.

During the cross-examination of Mrs. Gotshall, petitioner attempted to elicit testimony proving his contention that the true reason for the recommendation that he not be rehired was dissatisfaction with his political activities—including his appearance before the Modesto City Council on behalf of the Peace and Freedom Party and his letters to the editor of the Modesto Bee expressing political views. The county counsel, representing the Board, objected to this line of questioning, and the hearing officer, relying upon *Neely* v. *California State Personnel Bd.* (1965) 237 Cal.App.2d 487, 493-494 [47 Cal.Rptr. 64], ruled that the motivations of petitioner's superiors in bringing the disciplinary action were not material "providing that the facts are such as would justify that disci-

plinary action."[3] However, the hearing officer also held that testimony regarding the motivations of petitioner's superiors would be material and admissible "if it has a direct bearing upon the credibility of their evidence." Under this ruling the following evidence was admitted *only* for impeachment purposes.

Upon cross-examination Mrs. Gotshall admitted that she had spoken with Mr. Olson, the school's principal, about petitioner's appearance before the Modesto City Council and about the letters which petitioner had written to the editor of the Modesto Bee.

Petitioner testified that on several occasions Mr. Olson had told him to stop writing letters to the paper and threatened that, if he did not and continued to take extreme positions, he would not be rehired. According to petitioner, Mr. Olson also stated that petitioner's participation on Armed Forces Day in a nonviolent demonstration against weapons "was not helping [his] situation at [Thomas] Downey [High School]." Petitioner testified that on other occasions Mr. Olson had asked him why he was "continually taking extreme . . . positions and involving [himself] with minorities" like Negroes, and had questioned his appearance before the city council, since it seemed that he was "protecting criminals." Mr. Olson also ordered him to remove from his car several bumper stickers which indicated support for farm workers and the Peace and Freedom Party. Finally, petitioner stated that Mr. Olson had said that he felt petitioner would do better in another community, but that he would not give him a recommendation since petitioner was not an objective teacher.

Called as a witness by petitioner, Robert Elliott, former director of personnel for the district, testified that petitioner's personnel file contained material concerning his appearance before the city council and his letters

---

[3]The hearing officer also expressed his view in the following terms: "The point that I'm trying to set forth, gentlemen, and the one I intend to follow in this hearing, is I will look to see whether there consists and whether [the county counsel] is able to establish that there exists grounds for the action taken against Mr. Bekiaris. If there are grounds to justify that action the mere fact that his supervisors did not like him, or liked him, would not in any way affect the propriety of their action." Later, when the matter was about to be submitted and counsel for petitioner sought a stipulation that the letters written to the editor of the Modesto Bee were subject to First Amendment protection, the hearing officer stated: "I don't think that question is before me nor are the contents of the letters. This may conceivably involve something as innocuous as to whether there should be bells on cats to protect the birds, and I cannot see whether it makes any difference whether Mr. Bekiaris is pro-bell or anti-bell insofar as what kind of teacher he is. This is what we are interested in here, not his, not his letters. [Pars.] The only grounds for disciplinary action against Mr. Bekiaris are those grounds set forth in the accusation. And no letters are mentioned there of any type. And I certainly would not draw any inference as to what these letters are nor should I. I don't think they're important."

to the editor. He also stated that petitioner's activities had prompted the personnel office to write a letter to the county counsel inquiring whether a teacher could be fired for writing letters to newspapers. The response of the county counsel had been that a teacher could be fired only on the basis of his teaching.

The Board offered no evidence to rebut any of the foregoing testimony.

On April 9, 1969, the hearing officer filed his proposed decision. He found that the evidence was insufficient to support any of the charges made in the accusation. He recommended that the Board find that "[t]he evidence did not establish that sufficient cause exists to refuse to reemploy [Bekiaris] for the school year 1969-70" and that it order that "[t]he recommendation that [Bekiaris] not be reemployed to serve in the Modesto High School District for the school year 1969-70 is disapproved." Because of this determination the hearing officer was not required to reach petitioner's contention that he had been dismissed for the exercise of his constitutional rights. However, as indicated above (fn. 3, *ante*), the hearing officer was of the view that this issue was not properly before him in any event.

The Board declined to adopt the hearing officer's proposed decision. Instead, acting pursuant to section 11517, subdivision (c), of the Government Code,[4] it reviewed the record of the hearing and, without taking additional evidence, concluded that certain charges against petitioner were supported by the evidence[5] and constituted sufficient cause to refuse to rehire him. Although petitioner appeared through counsel before the Board and argued that the real reason for his dismissal by school authorities was dissatisfaction with his political activities—and although peti-

---

[4]Section 11517, subdivision (c), provides in relevant part: "If the proposed decision is not adopted as provided in subdivision (b), the agency itself may decide the case upon the record, including the transcript, with or without taking additional evidence, . . . The agency itself shall decide no case provided for in this subdivision without affording the parties the opportunity to present either oral or written argument before the agency itself."

[5]The Board found that petitioner "failed to respond to direction to prepare and supply course outline" in that he returned to the district director of curriculum "a 1963 brief course outline, not prepared by the teacher, but supplied to him by the Director . . . as a general, undetailed, outline"; that petitioner "failed to follow prescribed course of study, as revealed on three specific occasions by direct observation of his class . . . ."; that petitioner "taught material directed for top class level teaching to classes at average or low-average levels . . . ."; that petitioner "made excessive use of the lecture, or 'teacher-telling' method of teaching, as distinguished from involvement of students in discussion . . . ."; and that petitioner "failed to exhibit cooperation with superiors by, among other things, demanding advance notice of, and the right to have a witness present, at conferences with the school administration . . . ."

tioner submitted comprehensive points and authorities to the effect that dismissal for such a reason was improper—the Board failed to make a finding on the issue thus raised.

Petitioner filed a petition for a writ of mandate in the Superior Court of Stanislaus County seeking to have the Board's decision set aside. He alleged that the decision was invalid because (1) the notice of recommendation not to reemploy him was not properly served, (2) the county counsel improperly informed the Board that it could deny reemployment on the ground that petitioner was "undesirable," (3) the Board failed to consider petitioner's defense that the accusation was an intentionally discriminatory application of law, (4) the findings were not supported by the evidence and in turn did not support the decision, and (5) the dismissal was "based upon nonacademic reasons, namely, petitioner's exercise of rights protected by the first amendment of the United States Constitution and Section 13004 of the California Education Code." By stipulation of the parties, the case was submitted upon the transcript of the administrative hearing; no additional evidence was presented to the trial court.

The decision of the trial court reveals that it found that the school board had given petitioner a full and fair hearing in the matter and that its decision was supported by substantial evidence. The court dismissed petitioner's contention that the real basis of his dismissal lay in the Board's disapproval of his exercise of First Amendment rights, stating: "The record simply does not sustain such a contention for the simple reason that the findings and decision of the respondent board are adequately supported by the record in this case." In accordance with its decision, the trial court entered judgment denying the peremptory writ of mandate and discharging the alternative writ of mandate.

Petitioner appeals, urging that the trial court and the Board erred in failing to give adequate consideration to his contention that he was discharged for exercising his constitutionally protected rights.[6] We agree.

The applicable substantive principle has been recently stated by us in the following terms: "It is now well-settled that even a probationary public employee or one serving at the pleasure of the appointing authority

---

[6]Petitioner also asserts that the trial court exceeded its jurisdiction by considering charges not found to be true by the Board, and that the trial court's decision was not supported by substantial evidence. Since we find merit in petitioner's first contention and reverse the judgment for that reason, we need not adjudicate the other issues raised. For purposes of this opinion we assume, but do not decide, that the findings of the Board were supported by substantial evidence and that cause for dismissal stated in the findings related solely to the welfare of the school and the pupils thereof.

may not be dismissed from his employment for the exercise of constitutional rights absent a showing that the restraints which the employing body would impose on those rights are justified by a compelling public interest. (*Bagley* v. *Washington Township Hospital Dist.* (1966) 65 Cal.2d 499, 503-505 [55 Cal.Rptr. 401, 421 P.2d 409]; *Rosenfield* v. *Malcolm* (1967) 65 Cal.2d 559, 562-563 [55 Cal.Rptr. 505, 421 P.2d 697]; *Ball* v. *City Council* (1967) 252 Cal.App.2d 136, 141 [60 Cal. Rptr. 139]; see also, *Fort* v. *Civil Service Commission* (1964) 61 Cal.2d 331 [38 Cal.Rptr. 625, 392 P.2d 385]; cf. *Hollon* v. *Pierce* (1967) 257 Cal.App.2d 468, 478, fn. 4 [64 Cal.Rptr. 808] and accompanying text.)" (*Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 778-779 [97 Cal.Rptr. 657, 489 P.2d 537].) We here determine how this principle is to be applied in the context of pertinent administrative review procedures—the broad outlines of which we now proceed to trace.

Chapter 5 of the Administrative Procedure Act (Gov. Code, § 11500 et seq.), which is made applicable to dismissals of probationary school employees by section 13443 of the Education Code, details the procedures of administrative adjudication which are brought into play when an employee seeks a hearing relative to his impending dismissal. "Under the applicable provisions of the Administrative Procedure Act the hearing is initiated by an accusation stating the charges against the teacher, each party has the right to introduce evidence and to cross-examine witnesses, and the board must make findings of fact and determine the issues presented. (Gov. Code, §§ 11503, 11513, 11518.)" (*Griggs* v. *Board of Trustees* (1964) 61 Cal.2d 93, 95-96 [37 Cal.Rptr. 197, 389 P.2d 722].)

Judicial review of a determination of the board may be obtained through the filing of a petition for mandate pursuant to the provisions of the Code of Civil Procedure. (Gov. Code, § 11523.) "The inquiry extends to the questions whether the board has proceeded without or in excess of jurisdiction, whether there was a fair trial, and whether there was any prejudicial abuse of discretion. An abuse of discretion is established if the board has not proceeded in the manner required by law, the order or decision is not supported by the findings, or, with regard to local boards like the one before us, the findings are not supported by substantial evidence in the light of the entire record. (Code Civ. Proc., § 1094.5, subds. (b), (c); [citations].)" (*Griggs* v. *Board of Trustees, supra,* at p. 96; cf. *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144 [93 Cal.Rptr. 234, 481 P.2d 242]; *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 915 [80 Cal.Rptr. 89, 458 P.2d 33].) However, section 13443 specifically limits the scope of judicial review by providing in subdivision (d) thereof that "[t]he determination of the governing board as to the sufficiency of the

cause pursuant to this section shall be conclusive, but the cause shall relate solely to the welfare of the schools and the pupils thereof . . . ." Thus, "where there is evidence to support the board's findings of fact and where the cause for dismissal found by the board can reasonably be said to relate to the 'welfare of the schools and the pupils thereof,' the reviewing court may not consider whether the facts found are sufficiently serious to justify dismissal." (*Griggs* v. *Board of Trustees, supra,* at p. 96.)

It is to be emphasized, however, that the general applicability of the rule of substantial evidence in light of the entire record does not affect the power and duty of the trial court to make an independent determination of questions having a legal character. Thus, "[n]othing . . . prevents the reviewing court from determining whether the board has proceeded in excess of jurisdiction, whether there has been a fair trial, and whether the board's findings of fact are supported by substantial evidence." (*Griggs* v. *Board of Trustees, supra,* at p. 96.) Moreover, it is for the court to determine whether a particular cause for dismissal "relate[s] solely to the welfare of the schools and the pupils thereof" as required by section 13443. (*Blodgett* v. *Board of Trustees* (1971) 20 Cal.App.3d 183, 190 [97 Cal.Rptr. 406]; *McGlone* v. *Mt. Diablo Unified Sch. Dist.* (1969) 3 Cal.App.3d 17, 22 [82 Cal.Rptr. 225].)

Upon appeal from the judgment of the superior court, the scope of review of the appellate court is similar to that prevailing in an ordinary civil appeal. Since the substantial evidence test controls review of all questions of the sufficiency of the evidence in support of findings in decisions by boards of education with respect to sufficiency of cause for dismissal (*Griggs* v. *Board of Trustees, supra,* 61 Cal.2d at p. 96; § 13443, subd. (d)) "the trial and appellate courts occupy identical positions with regard to the administrative record, and the function of the appellate court, like that of the trial court, is to determine whether that record is free from legal error. [Citation.]" (Fn. omitted.) (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 916 [80 Cal.Rptr. 89, 458 P.2d 33]; see Cal. Administrative Mandamus, *supra,* §§ 15.24, 15.26, pp. 280-281.)

We think it clear that, within the context of this procedural structure, the substantive principle restated by us in *Bogacki* and set forth above can properly form the basis of a defensive contention by the affected teacher which must be determined in the first instance by the board even though it lies outside the scope of the formal accusation.[7] When, as in the

---

[7]As we have indicated, the hearing officer based his ruling to the contrary upon *Neely* v. *California State Personnel Bd., supra,* 237 Cal.App.2d 487, 493-494, which in

instant case, the teacher seeks to present evidence to show that he was dismissed for the exercise of constitutional rights whose consequent limitation was not justified by a compelling public interest, that evidence must be received substantively and a determination made. The failure to do so results in legal error to be corrected by the issuance of an appropriate writ of mandate.

In the instant case we must conclude that the administrative record is infected with legal error in that the Board failed to give adequate consideration to petitioner's contention that, in violation of the substantive principle above stated, he was actually dismissed from his employment for the exercise of constitutional rights whose consequent limitation was not justified by a compelling public interest. As we have seen, the relevant testimony elicited on this point before the hearing officer was not admitted in evidence substantively but only for purposes of impeaching the Board's witnesses. Thus the administrative record, although actually containing the pertinent evidence, was nevertheless incomplete because of the restriction placed upon it under the rule of limited admissibility. The hearing officer, erroneously concluding that his competence in the premises did not extend to a determination of petitioner's defensive issue, made no finding on that issue—although it must be recognized that the hearing officer actually had no occasion to reach that issue because he found that the evidence was insufficient to support any of the charges in the accusation. ■    The Board, addressing itself to the record made before the hearing

---

turn relies upon a series of older California cases: *Board of Education* v. *Swan* (1953) 41 Cal.2d 546, 555 [261 P.2d 261]; *Neuwald* v. *Brock* (1939) 12 Cal.2d 662, 675-676 [86 P.2d 1047]; *Kennedy* v. *State Personnel Board* (1936) 6 Cal.2d 340, 344 [57 P.2d 486]; *Livingstone* v. *MacGillivray* (1934) 1 Cal.2d 546, 558 [36 P.2d 622]; and *Monahan* v. *Dept. of Water & Power* (1941) 48 Cal.App.2d 746, 754-755 [120 P.2d 730]. Building upon the premise that the executive discretion in appointment or removal is absolute, these cases held that "an inquiry into extraneous facts to determine the possible improper motive of an executive or administrative board in dismissing an employee is not justified" (*Neuwald* v. *Brock, supra,* 12 Cal.2d 662, 676; *Kennedy* v. *State Personnel Board, supra*) except for purposes of impeaching witnesses. (*Neely* v. *California State Personnel Bd., supra.*)

However, the notion that the executive power to hire and fire is absolute was explicitly rejected in *Bagley,* where we stated: "Although an individual can claim no constitutional right to obtain public employment or to receive any other publicly conferred benefit, the government cannot condition admission to such employment or receipt of such benefits upon any terms that it may choose to impose. . . . [T]he power of government, federal or state, to withhold benefits from its citizens does not encompass a supposed 'lesser' power to grant such benefits upon an arbitrary deprivation of constitutional right." (Fn. omitted.) (*Bagley* v. *Washington Township Hospital Dist., supra,* 65 Cal.2d 499, 503-504.) Since the reason for the rule stated in *Neely* and its predecessors has been discredited, the rule, too, must fall. Therefore, to the extent that they are inconsistent with our opinion herein, *Swan, Neuwald, Kennedy* and *Livingstone* are overruled, and *Neely* and *Monahan* are disapproved.

officer, disagreed as to the sufficiency of the evidence to support the charges but nevertheless—and in the face of oral and written argument setting forth the relevant authorities—refused to reach the defensive issue raised. This was legal error which the trial court should have corrected by mandate.[8] The judgment denying the writ must therefore be reversed and the case remanded.

It remains that we determine the proper disposition of this case upon remand. Fundamental to this question, however, is a detailed consideration of the proper scope of judicial review in cases wherein—unlike the instant case—the board *has* made findings on the issue concerning us. For this reason, and for the additional reason that in future cases of this nature the board will make appropriate findings as required by this opinion, we explain the proper scope of review in such cases.

■  At the outset it must be emphasized again that judicial review of the factual basis for, and the sufficiency of the cause of, dismissal is governed by the substantial evidence rule. (§ 13443; Code Civ. Proc., § 1094.5, subd. (c); *Griggs* v. *Board of Trustees, supra,* 61 Cal.2d 93, 96.) ■  Moreover, as we have also pointed out above in quoting from *Griggs,* "where there is evidence [i.e., substantial evidence] to support the board's findings of fact and where the cause for dismissal found by the board can reasonably be said to relate to the 'welfare of the schools and the pupils thereof' [§ 13443, subd. (d)], the reviewing court may not consider whether the facts found are sufficiently serious to justify dismissal." (61 Cal.2d at p. 96.)

On the other hand, although the reviewing court must accept evidentiary facts shown by substantial evidence and the sufficiency of those facts to constitute a stated cause, still it remains for the court to determine *as a matter of law* whether such cause relates to the welfare of the school and its pupils and is therefore adequate under the provisions of section 13443 to justify dismissal. (*Griggs* v. *Board of Trustees, supra,* 61 Cal.2d 93, 96; *Blodgett* v. *Board of Trustees, supra,* 20 Cal.App.3d 183, 190; *McGlone* v. *Mt. Diablo Unified Sch. Dist., supra,* 3 Cal.App.3d 17, 22; *Thornton* v. *Board of Trustees* (1968) 262 Cal.App.2d 761, 765-766 [68 Cal.Rptr. 842]; cf. *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375].) In this respect the court's function is equivalent to that generally performed by it in deter-

---

[8]The administrative errors in this case were not waived by petitioner's stipulation that the case be submitted to the trial court on the basis of the administrative record. The stipulation cannot reasonably be construed as an approval of the rulings of the hearing officer.

mining what ultimate legal conclusion is to be drawn from facts found by an administrative agency. (See *Merrill* v. *Department of Motor Vehicles, supra,* 71 Cal.2d 907, 917, and cases there cited.)

The particular problem here facing us cannot, however, be resolved by an attempt to label the subject determination as either "factual" or "legal." The situation in question is one wherein (1) the board has stated and supported an adequate cause or causes for dismissal; (2) the teacher has presented evidence that, notwithstanding this cause or these causes, the dismissal resulted from official dissatisfaction with his exercise of constitutional rights; and (3) the board has made a finding supported by substantial evidence that the real reason for dismissal *was* the stated adequate cause or causes and *was not* dissatisfaction with the teacher's exercise of constitutional rights. What is the standard governing the court's review of the latter finding? Is the court bound by the rule of substantial evidence in light of the entire record?

We have concluded that, although the reviewing court is bound to consider the evidentiary facts under the principles of administrative review which we have discussed, the dismissed employee is entitled to an independent judicial determination of the ultimate question whether, in light of those facts, he was dismissed not for the reasons stated in the accusation but rather because of official dissatisfaction with his exercise of constitutional rights.[9] We believe that this conclusion is required not only by previous decisions of this court which have applied the constitutional principle in question, but also by broad considerations concerning the treatment of constitutional issues in the context of administrative adjudication.

We turn first to the prior decisions. In *Stanton* v. *Dumke* (1966) 64 Cal.2d 199 [49 Cal.Rptr. 380, 411 P.2d 108], the plaintiffs were probationary state college teachers who were not employed for the fourth year and were therefore denied tenure. At their hearing before the chancellor they introduced evidence tending to show that their failure to be reemployed stemmed not from the proper reasons stated but from their activities in a teachers' union and their uncovering of a certain agreement among state college presidents to exclude students who had participated in southern sit-ins. The chancellor concluded that this was not the reason for the decision not to rehire. This court, considering the contention on appeal after

---

[9]The secondary question whether one dismissed for the exercise of constitutional rights was nevertheless properly dismissed because the consequent limitation on those rights was justified by a compelling public interest is clearly a legal question subject to judicial determination. (See *Bagley* v. *Washington Township Hospital Dist.* (1966) 65 Cal.2d 499, 505 et seq. [55 Cal.Rptr. 401, 421 P.2d 409].)

denial of mandate by the trial court, did not limit itself to a determination whether the chancellor's decision was suported by substantial evidence. After stating that the record before the chancellor "fully supports" his conclusion, we went on to say that *"Nothing in the record would warrant a conclusion* that the decision not to reemploy plaintiffs turned on other than the customary academic and professional reasons. No cause of action is stated when, as in this case, an administrative hearing has been accorded, the record of which indicates that the charges of impropriety are *illusory."* (Italics added.) (64 Cal.2d 199, 207.) Reviewing this language in the later *Rosenfield* case, we said: "[T]he fact that this court undertook to review the transcript of the hearing in the *Stanton* case and assess the weight of the recorded evidence should conclusively establish, contrary to the contention of the present defendant, that this court has the power and duty to review the dismissal of a provisional or probationary employee in circumstances which suggest a constitutional violation." (*Rosenfield* v. *Malcolm* (1967) 65 Cal.2d 559, 564 [55 Cal.Rptr. 505, 421 P.2d 697].) (See also *Hollon* v. *Pierce* (1967) 257 Cal.App.2d 468, 476-479 [64 Cal. Rptr. 808].)

Broad considerations of judicial policy provide the foundation for this conclusion. As we said in the *Rosenfield* case, "Unquestionably, a broad discretion reposes in governmental agencies to determine which provisional employees they will retain. Considerations of comity and administrative efficiency counsel the courts to refrain from any attempt to substitute their own judgment for that of the responsible officials. Nevertheless, when the record in a given case clearly establishes that unconstitutional conditions have been imposed upon the retention of public employment, we cannot permit the deference which we would otherwise accord administrative determinations to bar us from discharging our obligation to protect overriding constitutional rights." (65 Cal.2d at pp. 562-563.) Similarly, in the recent case of *Bixby* v. *Pierno, supra,* 4 Cal.3d 130, where we dealt with the related question of the standard of judicial review to be applied to the decisions of statewide agencies,[10] we observed that special scrutiny

---

[10]As pointed out in *Bixby* in footnote 2 on page 137 there is a line of authority prior to our decision in *Bixby* which held that the appropriate standard for judicial review of local agencies, as opposed to statewide agencies, was substantial evidence regardless of the nature of the right involved. The opinion in *Bixby* leaves open the question whether the *Bixby* rationale should likewise apply to local agencies thereby supplanting the substantial evidence standard of review with independent judicial determination wherever a vested fundamental right is involved. We need not reach that question in this opinion, even though the Board in this case is a local agency, since the question of the true motive for dismissal is a special constitutional defense inserted into the administrative review procedure to protect a probationary teacher's constitutional rights and necessarily subject to independent scrutiny by the courts.

is required when the subject decision affects fundamental rights. "Although we recognize that the California rule yields no fixed formula and guarantees no predictably exact ruling in each case, it performs a precious function in the protection of the rights of the individual. Too often the independent thinker or crusader is subjected to the retaliation of the professional or trade group; the centripetal pressure toward conformity will often destroy the advocate of reform. The unpopular protestant may well provoke an aroused zeal of scrutiny by the licensing body that finds trivial grounds for license revocation. Restricted to the narrow ground of review of the evidence and denied the power of an independent analysis, the court might well be unable to save the unpopular professional or practitioner. Before his license is revoked, such an individual, who walks in the shadow of the governmental monoliths, deserves the protection of a full and independent judicial hearing." (Fn. omitted; 4 Cal.3d at pp. 146-147.)

In these strong terms we have heretofore expressed our insistence that the courts retain the ultimate responsibility for insuring that fundamental constitutional rights not be abridged in the absence of a sufficiently compelling public interest. ▇▇ We continue to manifest that insistence by our decision today that a dismissed public employee is entitled to a judicial determination of the *true* reason for his dismissal when he presents evidence tending to show that he was dismissed for the exercise of constitutional rights whose consequent limitation was not justified by a compelling public interest.[11] We think that in these circumstances such a rule is indispensable to the integrity of the review process; otherwise the administrative board simply by its own findings can absolve itself of any action in derogation of constitutional rights and insulate such exculpation from any further scrutiny.

▇▇ To recapitulate, we hold that when a probationary teacher demands a hearing relative to his impending dismissal pursuant to section 13443 and seeks at that administrative hearing to present evidence tending to show that he was dismissed not for reasons stated in the accusation but for the exercise of constitutional rights, that evidence must be received substantively and findings must be made concerning it. If it is found by the board that the reason for dismissal *was not* the causes stated in the accusation but rather *was* official dissatisfaction with the teacher's exercise of constitutional rights, the board should order reinstatement unless it further

[11]Of course, once the trial court has determined the constitutional issue by an independent assessment of the factual elements the appellate court views the determination from the standpoint of the rule of substantial evidence. (*Bogacki* v. *Board of Supervisors, supra,* 5 Cal.3d 771, 779; *Hollon* v. *Pierce, supra,* 257 Cal.App.2d 468, 477; cf. *Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 143, fn. 10, and authorities there cited.)

determines that the consequent limitation on these rights is justified by a compelling public interest. If the board finds that the reason for dismissal *was* the causes stated in the accusation and *was not* official dissatisfaction with the teacher's exercise of constitutional rights, it should enter a finding to that effect. If the board finds that the reason for dismissal was *both* the causes stated in the accusation *and* official dissatisfaction with the teacher's exercise of constitutional rights, it should make a finding to that effect and further should determine whether, absent the exercise of constitutional rights, it would dismiss the teacher.

We further hold that when a dismissed teacher seeks judicial review of the board's decision by way of a petition for writ of mandate pursuant to section 1094.5 of the Code of Civil Procedure, the court shall proceed in all respects as it would in a case in which it is not authorized by law to exercise its independent judgment on the evidence *except that* it shall make an independent assessment of established factual elements and determine whether the true reason for dismissal was official dissatisfaction with the teacher's exercise of constitutional rights, so that, absent the exercise of these rights, the board would not have dismissed the teacher.[12] If it determines that question in the negative and also finds no legal error in the record it shall deny the writ. If it determines that question in the affirmative it should proceed to consider whether or not the consequent limitation on constitutional rights was justified by a compelling public interest. If it concludes that it was not justifed by a compelling public interest it should issue a writ of mandate requiring the Board to reinstate the teacher. If it concludes that it was so justified it should deny the petition for the writ.

On appeal from the decision of the trial court the appellate court's scope of review is identical to that of the trial court *except that* it shall uphold the determination of the trial court as to the reason for dismissal if that determination is supported by substantial evidence in light of the entire record. (Fn. 11, *ante.*)

Finally we turn to the disposition of the case before us. Here, of course, neither the Board nor the trial court followed the procedures we have outlined. However, the administrative record contains a substantial amount of evidence which petitioner offered in support of his contention of uncon-

---

[12]Just as we decline to permit school authorities to mask an unconstitutional dismissal behind a statement of valid causes, so we cannot allow a teacher genuinely dismissed for valid causes to be reinstated because school authorities were also displeased with his exercise of constitutional rights. If it were otherwise a teacher about to be dismissed for valid causes could insulate himself from dismissal simply by engaging in political activities offensive to his superiors.

stitutional dismissal and which was erroneously admitted for the limited purpose of impeaching credibility. It is possible, perhaps even likely, that this evidence is all or substantially all that petitioner might wish to present to be considered substantively on the issue in question. On the other hand, school authorities have not been afforded the opportunity to present evidence to the contrary, an opportunity to which they are certainly entitled.

Therefore, upon remand the trial court should issue a writ of mandate ordering the Board to receive all evidence offered to show the real reason or reasons for petitioner's dismissal and to make a finding as to whether the cause for petitioner's dismissal was official dissatisfaction with his exercise of constitutional rights.

The judgment is reversed and the case is remanded to the trial court for further proceedings in conformity with this opinion.

Wright, C.J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

**McCOMB, J.**—I dissent. I would affirm the judgment for the reasons expressed by Mr. Presiding Justice Stone in the opinion prepared by him for the Court of Appeal, Fifth Appellate District (*Bekiaris* v. *Board of Education of the City of Modesto,* Civ. No. 1268, filed January 14, 1971, certified for nonpublication).