[Civ. No. 48792. Second Dist., Div. Four. Nov. 24, 1976.]

DOROTHY RUTHERFORD et al., Plaintiffs and Appellants, v.
BOARD OF TRUSTEES OF THE BELLFLOWER UNIFIED
SCHOOL DISTRICT et al., Defendants and Respondents.

**COUNSEL.**

Brundage & Roseman and Steven Roseman for Plaintiffs and Appellants.

John H. Larson, County Counsel, and Audrey Oliver, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**KINGSLEY, Acting P. J.**—This is an appeal by certified school nurses, Dorothy Rutherford and Clarice Tremaine, from a superior court judgment denying their petition for a writ of mandate to reverse their dismissals as employees of the Bellflower Unified School District. The case now before us concerns appellants' employment for the school year 1973-1974. The same parties had been involved in previous litigation concerning their employment for the year 1972-1973. (*Rutherford v. Board of Trustees* (1974).)

In the trial below on the petition for writ of mandate there was no new evidentiary matter and the parties relied on the record, including the transcript of the proceedings before the administrative hearing officer. That transcript is before this court.

Dorothy Rutherford worked as a certified credentialed school nurse for respondents for about 12 years and Clarice Tremaine was also so employed for about 14 years. The school board had attempted to terminate appellants in 1972-1973, but appellants obtained a writ of mandate, and the board was required to set aside its order terminating employment. The board's appeal in the 1972-1973 case failed.[1]

While this first case was still being litigated, the same board terminated appellants for the school year 1973-1974.

Superintendent Guengerich and Assistant Superintendent Kendle decided to prepare a letter "not to reemploy" appellants. County counsel suggested to Mr. Kendle that he use the phrase "maintain health services" in the body of the letter. The notice letters to appellants were dated March 14, 1973.

Dr. Vermillion testified that the other board members and he received a packet of papers on March 13, 1973. These papers contained a letter from the superintendent to the assistant superintendent requesting the board, at the March 13, 1973, board meeting to reduce the number of employees or to reduce the particular kind of service or both due to a lack of funds. A letter in the packet also refers to the litigation with the two nurses. The packet also contains a suggested format to use in

---

[1]That case was decided on the ground that the board's notice of termination was not timely under section 13443 of the Education Code.

communicating with the nurses that their services would not be used during the 1973-1974 school year, and a recommendation that a motion worded in a certain manner be passed by the board on March 13 in furtherance of the plan. The suggested wording was provided to the board by Ruby Hyle who obtained the wording from the "County Counsel." The board passed the motion unanimously and the letters were sent out.

Appellants requested a hearing pursuant to Education Code section 13443. Appellants argued at that hearing that they were dismissed for reasons other than the reasons stated in the letters of March 14 and other than the reasons set forth in Education Code section 13447 and in violation of their constitutional rights. In support of its case, the board relied on Education Code section 13443 and Education Code section 13447, its notice letters, its reasons for terminating appellants and copies of the minutes of the board meeting.

Appellants point to testimony produced by the board to the effect that it considered that the purpose of the administrative hearing was to find out if appellants were the correct persons to lay off, when in reality, according to appellants, the board already had made that decision at an earlier board meeting. Appellants also point to evidence to the effect that Head Start nurses were retained who had less experience than appellants, and appellants were not offered or permitted a position in the Head Start program. Appellants contend that persons who work in Head Start are regarded as classified in so far as retirement is concerned, but in certain other ways they are regarded as certified employees. Head Start employees need a two-year college education to be certified.

It should be noted that, on March 15, 1973, the first case involving the nurses was still in litigation, and there was no determination as to whether the nurses had been properly laid off the previous year. Because the board did not know whether the nurses already had been laid off successfully, the board used in its notices the following language: ". . . and that the District maintain the number of nurses in health services as it now exists for this 1972-73 year."

After a hearing, before the administrative hearing officer, the hearing officer decided that the district could terminate appellants under Education Code sections 13447 and 13443. The board of trustees adopted the hearing officer's decision and findings as their own. On the writ of

mandate, the superior court affirmed the board's decision that the nurses had been properly terminated for the year 1973-1974.

## I

Appellant's first argument is that the provisions of Education Code section 13443 were violated, and as a result, appellants were denied due process of law. Appellants cite the following language from Education Code section 13443: ". . . (3) The hearing shall be conducted by a hearing officer who shall prepare a proposed decision, containing findings of fact and a determination as to whether the charges sustained by the evidence are related to the welfare of the schools and the pupils thereof, but the proposed decision shall not contain a determination as to the sufficiency of the cause or a recommendation as to disposition, which sufficiency and disposition shall be determined by the governing board."

Appellants argue that the hearing officer violated Education Code section 13443 since that section states, ". . . shall not contain a determination as to the sufficiency of the cause. . . ." For reasons we shall state below, appellants are in error. The language of the statute was amended on January 1, 1974, and that section has since provided, in part, as follows: ". . . and (3) the hearing shall be conducted by a hearing officer who shall prepare a proposed decision, containing findings of fact and a determination as to whether the charges sustained by the evidence are related to the welfare of the schools and the pupils thereof. The proposed decision shall be prepared for the governing board and shall contain a determination as to the sufficiency of the cause and a recommendation as to disposition. . . ."

■ Although the appellants received notice in March 1973 before the amendment in the Education Code, the date of the actual administrative hearing is the pertinent date as far as the instant amendment is concerned. Since the actual hearing on the matter began on August 5, 1974, after the amended language was in effect, the January 1st change in the law required that the hearing officer make a determination as to the sufficiency of the cause. Legislation designed solely as procedural is not subject to the general rule that statutes should not be retroactive. (*Arques v. National Superior Co.* (1945) 67 Cal.App.2d 763, 778 [155 P.2d 643].)

## II

Appellants argue that termination must be accomplished under certain guaranties, including a fair hearing and an impartial decision maker. (*Board of Regents* v. *Roth* (1972) 408 U.S. 564 [33 L.Ed.2d 548, 92 S.Ct. 2701].) Appellants reason that, since the same board members who attempted to terminate appellants in 1973-1974 had also attempted to terminate appellants in 1972-1973, the board was not a fair and impartial board. Appellants also argue that, because the board was previously presented with a packet of papers recommending that the board take action in dismissing appellants, and recommending the actual language of the letter of notification, the board was not impartial and the decision was not fair.

We do not agree. One duty of the board under Education Code section 13447 was to determine ". . . whenever a particular kind of service is to be reduced or discontinued not later than the beginning of the following school year." ▉ Since by statute the board was required to determine whether a particular kind of service is to be reduced or discontinued, we cannot say that the board acted unfairly or improperly simply because they made a decision that they were empowered to make under the statute.

▉ Also, there was nothing improper in presenting the board with the packet of papers recommending the termination. The superintendent was in a position to know what the available funds were to be for the coming year, and to make his information available to the board. That is part of his duties; the board did nothing more than attempt to live within its limited income.

▉ Further, there is no evidence that the board of trustees, by virtue of its resolution of March 13, 1973, made any improper premature determination with respect to the issues. Their decision was not final until they adopted the hearing officer's decision on October 1, 1974. Although the board said they thought at the time of their resolution that appellants were the proper persons to be terminated, they testified that the very purpose of the administrative hearing was to determine who, in fact, were the proper parties to be laid off in the light of the determination of the need to reduce services.

The record shows that the board of education accepted in totality the findings of fact of the hearing officer, that they adopted the recommendation of the hearing officer and that they adopted the proposed decision of the hearing officer. Since they adopted the decision of the administrative hearing officer, appellants cannot persuasively claim unfairness just because the board made a preliminary decision to reduce services and because they thought appellants were the ones to be terminated prior to the time of the administrative hearing.

■ Appellants appear to contend that there was something improper because the board received advice from their legal counsel on the proper termination procedure. There is nothing improper in this. The law requires notification by March 15th in order to reduce services, and there was nothing unlawful in finding out the proper legal way to reduce services. To hold otherwise would produce a unique anomaly in the law.

### III

Appellants argue that they were denied due process in that they were not permitted to present evidence on constitutional issues. Appellants cite the case of *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575 [100 Cal.Rptr. 16, 493 P.2d 480], for the proposition that an employee of a school district must be permitted to present evidence to show that he was dismissed for the exercise of constitutional rights whose consequent limitations were not justified by a compelling public interest. Although a dismissed public employee is entitled to a judicial determination of the true reason for his dismissal when he presents evidence tending to show he was dismissed for the exercise of his constitutional rights, (*Bekiaris* v. *Board of Education, supra*), there is no showing that appellants were claiming that the reason for dismissal was specifically because appellants were "exercising constitutional rights."[2] Appellants' argument that they were "denied due process" is not the same as the principle of the *Bekiaris* case which holds that public employees must be given an opportunity to show that the true reason for their dismissal was "for exercising constitutional rights."

---

[2]Appellants gave a number of reasons. They said, ". . . First of all, the termination was not in accordance with Education Code 13447 for two reasons: Firstly, the requirements for termination which deal with the reasons for which certified personnel may be terminated were not followed, were not adhered to . . . Secondly, there was a direct violation of the last sentence at paragraph two and the last paragraph of—paragraph four of 13447 . . . They're also contending there has been a wilful and unlawful withholding of employment on behalf of the district against respondents . . . We are also contending that even if 13447 were observed, there is and was an unlawful termination

Appellants also argue that there was a "vendetta" against the nurses by the board for bringing their first lawsuit, and perhaps this is what appellants mean when they allege that they were really terminated for exercising their "constitutional rights." The hearing officer did permit the parties to go into the area of the board's good or bad faith, its bias, or its prejudice in terminating appellants, so appellants have no complaint. If appellants specifically wanted a determination on whether they were terminated for exercising "constitutional rights" in bringing their first suit, they should have made their legal contention clearer[3] to the hearing officer.

The court below specifically found that there was no "conspiracy to withhold employment from the petitioners because they had litigated their termination of the previous school year" and that there was no improper motive on the part of the school board. ▆ Our examina-

---

because termination of your nurses was in violation of the mandated state programs and a violation of certain federal and state regulations . . . We're also contending that the termination was unlawful because it was contrary to the welfare of the schools and the pupils thereof of the Bellflower Unified School District . . . We also contend that there has been a violation of the due process clause, Fourteenth Amendment of the United States Constitution, by termination of your nurses. . . . So that, in a nut shell, is what our position will be. We believe that we should be allowed to present evidence on all of those matters, and this is our intention. [Transcript, Vol. 1, p. 24, line 26, to p. 25, line 26.]

"HEARING OFFICER GALLAGHER: It would appear to me that much of this would be legal argument. [Transcript, Vol. I, p. 24, line 26, to p. 25, line 28.]"

[3]Counsel brought the issue to the attention of the hearing officer as follows:

"HEARING OFFICER GALLAGHER: All right.

"Would you step down. Would you wait outside while Mr. Roseman makes his offer of proof.

"(Witness departs the hearing room.)

"MR. ROSEMAN: Yes, your Honor. I think that these questions are for the purpose of attempting to determine whether the termination of your nurses was for reasons having to do with the fact that they had a litigated case on record against the school district.

"And if so, such a reason for terminating your nurses we would submit is not in accordance with Section 13447, nor is there any rule or regulation requiring the termination of nurses or authorizing termination of certificated personnel because they have litigation pending with the school district.

"So we believe that if the witness so testifies, this will be quite relevant to the proceedings to demonstrate again that 13447 was not complied with. Termination was for reasons other than stated in 13447.

"MR. WAGNER: Madam Hearing Officer, I don't believe that's an offer of proof. I believe that's legal argument.

"An offer of proof is a witness will testify thus and so.

"MR. ROSEMAN: He'll testify that way.

"MR. WAGNER: I submit that which Mr. Roseman just indicated is not an offer of proof. It's legal argument.

"An offer of proof is what a witness will testify of a given fact.

"MR. ROSEMAN: This is what I believe the witness will testify. And that's the reason

tion of the record leads us to conclude that the court's finding was correct, and that appellants were terminated solely in order to reduce services. Appellants were permitted to ask questions about whether they were terminated because of the 1972-1973 litigation (Admin. Hg., vol. I, pp. 44, 61, 65, 67, 81, 175, 176). Mr. Kendle and Dr. Vermillion unequivocally denied that the termination had anything to do with the prior litigation. The testimony on which appellants rely to show the contrary (p. 171) is taken out of context. There is nothing to show that the appellants were terminated because of a vendetta by the board.

## IV

Appellants argue that they should have been permitted to show that certain mandated health services were not being performed by the school district. Appellants have not shown the materiality of that evidence. ■ Also, even though a service must continue to be performed in a school district, the particular kind of service of the employee may be eliminated. (See *Davis* v. *Berkeley School Dist.* (1934) 2 Cal.2d 770 [40 P.2d 835].)

## V

Appellants object that the hearing officer limited evidence to a period between June 22, 1972, and May 15, 1973. ■ But that is the period in which the board had to act, if it acted at all to reduce services for the coming year. Appellants have not shown how any other periods were relevant.

---

I'm asking the questions.

"HEARING OFFICER GALLAGHER: Mr. Roseman, I'll permit you to go into an area of bias and prejudice or good faith or bad faith on any of the participants in these transactions.

"But beyond this—I think litigation is final.

"MR. ROSEMAN: Litigation is final. But suppose there are other reasons that the board acted—the board acted in terminating your respondents?

"HEARING OFFICER GALLAGHER: I have said the area that I will permit examination. And I think we ought to limit it to that.

"This would be the area where the board might be relying upon the superintendent or his recommendations by his associates to the board. If the board did rely on these recommendations and there is bias or prejudice or bad faith involved, then I would agree that you should be permitted to go into it. But for that purpose only.

"MR. ROSEMAN: Yes. All right. Well, I'll certainly agree."

VI

Appellants argue that the notice letter of March 14, 1973, did not comply with Education Code section 13447. The March 14, 1973, letter gave as a reason for termination to "Maintain health services (four nurses) as they exist in the 1972-73 school year." Education Code section 13447 specifies that there are two reasons to deprive a permanent employee of his position. They are, "Whenever in any school year the average daily attendance in all of the schools of a district for the first six months in which school is in session shall have declined below the corresponding period of either of the previous two school years, or whenever a particular kind of service is to be reduced or discontinued not later than the beginning of the following school year . . . ."
■ Appellants are correct in their contention that employees may not be dismissed for reasons other than those specified by statute, (*Burgess* v. *Bd. of Education* (1974) 41 Cal.App.3d 571 [116 Cal.Rptr. 183]) and "maintaining health services" is not patently a statutory reason. However, the hearing officer correctly held that the only reasonable construction of the language of the letters was that the district was reducing the nursing staff, which is a proper reason for employee dismissal within the statute. The district was faced with the fact that there had been a prior attempt to reduce nursing services in 1972 which was still in litigation, and no decision had yet been reached as to whether the nursing services had actually been reduced. Since no decision had been reached as to whether services were reduced, the wording of the letter did not call for a reduction in specific terms. But the intent of the district was clear, the meaning of the letters was clear, and the nurses could not have been harmed by the wording.[4] The board was attempting to reduce services, however inartful the language.

At oral argument, counsel (if we understood him correctly) argued that, in fact, the board had not reduced "services" but only employees. The argument is specious. ■ A board may "reduce services" either

---

[4]Appellants also make the following arguments: "However, if the hearing officer is correct in interpreting the language of 'Maintain Health Services' to mean that this is an 'Intent by the District to Reduce Nursing Staff in the School Year 1973-74,' then the hearing officer should be bound by the same interpretation in the use of these terms by the Board when it made and passed the motion of March 13 (1973); that is, if the school district by use of these terms indicated an intent to reduce nursing staff, it would have to be said that the Board (because it used same or similar terms) also intended to reduce nursing staff when it passed its motion of March 13, and therefore the Board avoided due process to your Appellants by arriving at a decision to terminate them before the fair and impartial hearings were to take place."

by determining that a certain type of service to students shall not, thereafter, be performed at all by anyone, or it may "reduce services" by determining that proferred services shall be reduced in extent because fewer employees are made available to deal with the pupils involved. Either (or both) determination falls within the statutory language.

### VII

Appellants argue that they should have been offered jobs with Head Start, because they had more seniority than the Head Start nurses. Education Code section 13447 states in part:

". . . provided, that the services of no permanent employee may be terminated under the provisions of this section while any probationary employee, or any other employee with less seniority, is retained to render a service which said permanent employee is certificated and competent to render.

"

. . . . . . . . . . . . . . . . . .

"The board shall make assignments and reassignments in such a manner that employees shall be retained to render any service which their seniority and qualifications entitle them to render."

More specifically, appellants contended that two other nurses with less seniority, one of whom was definitely certificated, were retained in positions in the United States government programs of Head Start and Children's Center, and these positions should have been offered to appellants.

In an opinion of the Attorney General (55 Ops.Cal.Atty.Gen. 428 (1972)) it was held that where the number of certificated employees of a school district is reduced when attendance falls off, affected employees in the regular program of the school district have the right to "bump" the certificated employees who have been hired and used exclusively to instruct classes conducted by school districts under contract with public or private agencies. Appellants reason that if a permanent employee is terminated in accordance with section 13447 because of the lowering of an average daily attendance, and has the right to bump employees in special programs, it follows that permanent employees when terminated because of other reasons associated with section 13447 have the same or similar right. Appellants' reasoning has merit.

However, the lay-off provisions for children's center employees vary from Education Code section 13447 provisions dealing with the lay off of regular certified employees.

Education Code section 16766 provides in part: "A district may lay off an employee required to have such a permit at any time during the school year for lack of work or lack of funds or may provide for his employment for not to exceed 90 days in any one school year on an intermittent basis which shall not be deemed probationary service. The order of layoff shall be determined by length of service. The employee who has served the shortest time shall be laid off first, except that no permanent employee shall be laid off ahead of a probationary employee. A permanent employee who has been laid off shall hold reinstatement rights for a period of 39 months from the date of layoff."

Thus, the procedure for laying off a certified children's center employee is similar to procedures for laying off the classified employee, and a children's center certified employee may be laid off only for lack of work or lack of funds. Under these circumstances, regular certified employees laid off pursuant to Education Code section 13447 would not be able to "bump" a children's center or Head Start employee out of his position, because the statutory grounds permitting termination of the two types of employees are different.

Also, persons employed in children's centers must hold children's center permits issued by the commission for teacher preparation and licensing (Ed. Code, § 16760) and appellants have cited us to no evidence showing that they have such a permit.

The judgment is affirmed.

Dunn, J., and Jefferson (Bernard), J., concurred.

A petition for a rehearing was denied December 10, 1976, and appellants' petition for a hearing by the Supreme Court was denied January 19, 1977.