[No. E000746. Fourth Dist., Div. Two. Dec. 17, 1984.]

UNITED STEELWORKERS OF AMERICA, LOCAL 8599, AFL-CIO, Plaintiff and Appellant, v.
BOARD OF EDUCATION OF THE FONTANA UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

826

COUNSEL

Schwartz, Steinsapir, Dohrmann & Sommers, Robert M. Dohrmann and David S. Adelstein for Plaintiff and Appellant.

Dennis M. Sullivan, Jeffrey Sloan, Andrea L. Biren, Peter A. Janiak, Madalyn J. Frazzini, E. Luis Saenz, Maureen C. Whelan, Marcia L. Meyers, Marci B. Seville, William C. Heath and Harry J. Gibbons, Jr., as Amici Curiae on behalf of Plaintiff and Appellant.

Wagner, Sisneros & Wagner and John J. Wagner for Defendant and Respondent.

OPINION

MORRIS, P. J.—Plaintiff, Local 8599, United Steelworkers of America, AFL-CIO (Union), appeals from a judgment denying its petition to compel arbitration. (Code Civ. Proc., §§ 1281.2, 1290.) On appeal the Union contends that the petition to compel arbitration should have been granted because a school district is not statutorily barred from delegating final disciplinary authority over classified employees to a neutral arbitrator pursuant to a collectively bargained agreement. We affirm.

### FACTS

This case involves the discharge of a permanent classified employee of the Fontana Unified School District (District). Ms. Upshaw was a bus driv-

er, and as a member of the classified service she was subject to disciplinary action only for cause pursuant to the provisions of Education Code section 45113.

On March 17, 1983, Ms. Upshaw was given notice of her suspension and termination, and that she had a right to a hearing on the charges supporting the suspension and termination. She demanded a hearing. A hearing was held before the governing board on May 17, 1983. At the conclusion of the hearing the governing board determined that Ms. Upshaw should be terminated.

In March 1983, plaintiff Union filed a grievance on behalf of Ms. Upshaw protesting her suspension and discharge. The Union is the exclusive representative of the classified employees of the District pursuant to the provisions of Government Code section 3540 et seq. In that capacity the Union has an obligation to represent the individual employees of the District in collective bargaining matters.

At all relevant times a master contract was in effect between the District and the Union. The contract established a five-step grievance procedure. Article 16 states that "when . . . a recommendation of termination is being submitted to the Board . . . a grievance may be filed by the employee. . . ." Article 17 provides the basis for a grievance: "alleged misrepresentation, misapplication or violation of the Agreement by the District."

Step IV of the grievance procedure provides for review by the Board of Education. Step V provides that: "If the grievant is not satisfied with the disposition of the grievance at Step IV . . . the International Union may, within ten (10) days after a written decision is rendered, or should have been rendered, by written notice to the Superintendent, elect to submit the grievance to arbitration. . . . [¶] The decision of the arbitrator shall be final and binding upon the parties."

The applicability of step V to disciplinary situations, however, is subject to the provisions of article 6 of the contract. Article 6 provides that "the District retains all of its powers and authority to . . . terminate and discipline for just cause . . . . [¶] . . . limited only by the specific and express terms of this Agreement, then only to the extent such specific and express terms are in conformance with the law."

On June 16, 1983, after the governing board hearing and dismissal of Ms. Upshaw, the Union suggested in writing that step V, binding arbitration, was appropriate. On August 29, 1983, the District responded that it would

not arbitrate, that the request for arbitration was untimely, and that regardless "[a]ny remedy that Ms. Upshaw had pertaining to her discharge was by way of a petition for Writ of Mandate [pursuant to Code of Civil Procedure section 1094.5]."

The District's response referred to Education Code section 45113. Education Code section 45113 provides that a permanent classified employee can only be terminated for cause, but that "the governing board's determination of the sufficiency of the cause for disciplinary action shall be conclusive."

On November 29, 1983, the Union filed a verified petition in the San Bernardino Superior Court for an order compelling arbitration of its grievance of Ms. Upshaw's discharge pursuant to Code of Civil Procedure sections 1281.2 and 1290. The District filed an answer.

The superior court denied the Union's petition on the ground that step V of the contract grievance procedure requiring submission to binding arbitration of the cause for terminating Ms. Upshaw was an impermissible alteration of the statutory provisions of Education Code section 45113. The court also held, however, in the event of appeal, that the step V request for arbitration by the Union has been procedurally adequate.

The Union has appealed.

### DISCUSSION

#### Overview

The overall position of the Union is that a school district may delegate final disciplinary authority over classified employees, including dismissal, to a neutral arbitrator. This conclusion is based upon two premises: (1) that the Educational Employment Relations Act of 1976 (EERA) (Gov. Code, § 3540 et seq.) allows collective bargaining of procedures and criteria for disciplinary action, including dismissal, to the extent not in conflict with the Education Code, and (2) that the prohibition of the EERA against superseding the Education Code (Gov. Code, § 3540) is not violated here, because the EERA provisions are harmonious with the provision of Education Code section 45113 that the governing board's determination regarding disciplinary action of permanent classified employees is conclusive.

■ While we agree with the Union's first premise, we disagree with their second premise. Accordingly, we hold that school districts subject to

Education Code section 45113 are precluded from subjecting their disciplinary conclusions regarding permanent classified employees to binding arbitration.

### General Scope of EERA

■ The Union's first contention is that the terms of the EERA are generally applicable to procedures and criteria for disciplinary action including dismissal.

In instituting a formal system of collective bargaining, the EERA requires public school districts to meet and negotiate in good faith on subjects within the "scope of representation" of the employee bargaining representative, which may include "procedures for final and binding arbitration." (Gov. Code, § 3548.5.) The EERA limited the scope of representation to "wages, hours . . ., and other terms and conditions of employment." Terms and conditions of employment are defined as "health and welfare benefits . . ., leave, transfer and reassignment policies, safety conditions of employment, class size, procedures to be used for the evaluation of employees, . . . [and] procedures for processing grievances . . . ." (Gov. Code, § 3543.2, subd. (a).)

The EERA also provides that "[a]ll matters not specifically enumerated are reserved to the public school employer and may not be a subject of meeting and negotiating . . . ." (*Ibid.*) However, the Public Employment Relations Board (PERB), pursuant to the authority to decide cases granted to it under Government Code section 3541.5, has held that "a subject is negotiable even though not specifically enumerated if (1) it is logically and reasonably related to hours, wages or an enumerated term and condition of employment, (2) the subject is of such concern to both management and employees that conflict is likely to occur and the mediatory influence of collective negotiations is the appropriate means of resolving the conflict, and (3) the employer's obligation to negotiate would not significantly abridge his freedom to exercise those managerial prerogatives (including matters of fundamental policy) essential to the achievement of the District's mission." (*Anaheim Secondary Teachers Assn.* v. *Anaheim Union High Sch. Dist.* (Oct. 28, 1981) PERB Dec. No. 177, 5 PERC ¶ 12148, at p. 660.) The California Supreme Court recently upheld the validity of this PERB three-part test for negotiable subject matter. (*San Mateo City School Dist.* v. *Public Employment Relations Bd.* (1983) 33 Cal.3d 850, 858-859 [191 Cal.Rptr. 800, 663 P.2d 523].)

Pursuant to the *Anaheim* test, PERB has required good faith negotiation with employee union representatives regarding a broad range of topics.

These include but are not limited to procedures for certificated employee discipline short of dismissal (*Arvin Elementary Teachers Assn.* v. *Arvin Union Sch. Dist.* (March 30, 1983) PERB Dec. No. 300, 7 PERC ¶ 14119, at p. 431.), and rules of conduct affecting the imposition of certificated employee discipline including termination (*San Bernardino Teachers Assn.* v. *San Bernardino Unified Sch. Dist.* (Oct. 29, 1982) PERB Dec. No. 255, 6 PERC ¶ 13249, at p. 965). The rationale of PERB is that "[d]isciplinary action, particularly termination, may have a direct impact on wages, health and welfare benefits, and other enumerated terms and conditions of employment since action may reduce or eliminate entitlement to those enumerated items." (*Ibid.*)[1]

In summary, a collectively bargained agreement generally may include provisions for arbitration of disciplinary grievances. This doctrine is applicable except when the provisions directly conflict with the provisions of the Education Code. (See Gov. Code, § 3540.)

### *Education Code Conflict With EERA*

■ The second premise of the Union, upon which this case turns, is that Education Code section 45113 and the EERA are harmonious. To the contrary, a collective bargaining agreement relinquishing Board control of disciplinary action would be in conflict with the express terms of Education Code section 45113. Accordingly, we hold that the school district is barred from applying the binding arbitration step of its grievance procedure to disciplinary decisions of the governing board.

Education Code section 45113 states the manner in which a permanent classified employee of a school district not incorporating the merit system shall be subjected to disciplinary action. The definition of disciplinary action is "dismissal, suspension, demotion, or any reassignment, without . . . voluntary consent, except a layoff for lack of work or lack of funds." (Ed.

---

[1]The *San Bernardino Teachers Assn.* cause of action arose before the 1981 amendment to section 3543.2 of the EERA which added Government Code section 3543.2, subdivision (b): "Notwithstanding Section 44944 of the Education Code, the public school employer and the exclusive representative shall, upon request of either party, meet and negotiate regarding causes and procedures for disciplinary action, other than dismissal, affecting certificated employees." PERB's holding did not consider the effect of section 3543.2, subdivision (b). (*San Bernardino Teachers Assn.* v. *San Bernardino Unified Sch. Dist., supra,* 6 PERC at pp. 966-967, fn. 5.)

Nevertheless, PERB's reasoning, which is based on the *Anaheim* test, is still good law to the extent not inconsistent with the EERA and amendments thereto or the Education Code. This is particularly relevant here because section 3543.2, subdivision (b) at most precludes collective bargaining of causes and procedures for the dismissal of *certificated employees only.* The instant case involves a classified employee.

Code, § 45101, subd. (e).) Critical to the instant case, Education Code section 45113 mandates that "[a]ny employee designated as a permanent employee shall be subject to disciplinary action only for cause as prescribed by rule or regulation of the governing board, but *the governing board's determination of the sufficiency of the cause for disciplinary action shall be conclusive.*" (Italics added.)

The provisions of the Education Code and the requirement of good faith collective bargaining contained in the EERA are often harmonious (see *San Mateo City School Dist.* v. *Public Employment Relations Bd., supra,* 33 Cal.3d at pp. 864-866); nevertheless, where they directly conflict the provisions of the Education Code are preemptive. The EERA states that "[n]othing contained herein shall be deemed to supersede other provisions of the Education Code and the rules and regulations of public school employers which establish or regulate tenure or a merit or civil service system or which provide for other methods of administering employer-employee relations. . . ." (Gov. Code, § 3540.)

In *San Mateo* the Supreme Court has specifically applied this self-contained restriction of the EERA to Education Code section 45113. The court stated as follows: "[S]ome parts of the Education Code exhibit a legislative intent to fully occupy the field to which they pertain thereby denoting that the Legislature also clearly intended to preclude collective negotiations and agreements in the same field. Where such statutory schemes are involved, a contract proposal may be in conflict without 'annulling' the statute, and negotiations should be prohibited.

"The primary example offered is those sections establishing a scheme for the layoff of classified employees. (Ed. Code, §§ 45101, subd. (g), 45114, 45115, 45117, 45298, and 45308.) *Another example would be found in Education Code sections 45113 and 45116, pertaining to causes and procedures leading to disciplinary action.*

"*[T]hese particular statutes mandate certain procedures, protections and entitlements for classified employees who are to be laid off or disciplined. The intent of section 3540 is to preclude contractual agreements which would alter these statutory provisions.*

"Where statutes are mandatory, as are these, a contract proposal which would alter the statutory scheme would be nonnegotiable under PERB's application of section 3540 because the proposal would 'replace or set aside'

the section of the Education Code." (*San Mateo City School District, supra,* 33 Cal.3d at p. 866, italics added.)[2]

█ Therefore, under the *San Mateo* rationale, the governing board's determination as to sufficiency of cause to terminate is conclusive and cannot be usurped by an agreement with the Union to subsequently submit grievances to binding arbitration. In the instant case the Union had collectively bargained a standing master contract with the District which included a five step grievance procedure. Article 16 of the master contract provided that "when . . . a recommendation for termination is being submitted to the board. . . . [¶] . . . a grievance may be filed by the employee. . . ." Step V of the grievance procedure allowed the international union to elect to submit the grievance to binding arbitration before a neutral arbitrator if the grievant was not satisfied with the disposition of the grievance. The governing board held a hearing upon demand of Ms. Upshaw. After the governing board upheld the dismissal, the international union sought binding arbitration pursuant to step V of the grievance procedure. That request was denied, presumably because of the provision of Education Code section 45113 that the "governing board's determination . . . shall be conclusive."[3]

Under the above analysis the District's refusal to submit Ms. Upshaw's grievance to binding arbitration was legally proper.

### San Mateo's Holding

The Union contends that the preceding analysis is wrong for two reasons. First, it argues that reliance on *San Mateo* is inappropriate because the relevant passage is dictum. Second, the Union maintains that the use of the term "conclusive" in Education Code section 45113 was only meant to preclude judicial review, not to prohibit delegation of authority to a neutral arbitrator.

In our opinion the interpretation of Education Code section 45113 in *San Mateo* constitutes a holding.

---

[2]In contrast, *Taylor* v. *Crane* (1979) 24 Cal.3d 442, 451 [155 Cal.Rptr. 695, 595 P.2d 129], held that an arbitration decision was binding where there was "no provision in the [city] charter barring the creation of an alternative form of appeal, such as arbitration." *Taylor* v. *Crane* is inapplicable here because Education Code section 45113 mandates that "the governing board's determination . . . shall be conclusive," and thereby expressly bars an alternative form of appeal such as arbitration.

[3]The master contract also apparently took provisions such as Education Code section 45113 into consideration. Article 6 states that "the District retains all of its powers and authority to . . . terminate and discipline for just cause. . . . [¶] . . . limited only by the specific and express terms of this Agreement, then only to the extent such specific and express terms are in conformance with the law."

■ It is an elementary concept that ratio decidendi is the principle or rule which constitutes the basis of the decision and creates binding precedent, while dictum is a general argument or observation unnecessary to the decision which has no force as precedent. (6 Witkin, Cal. Procedure (2d ed. 1971) Ratio Decidendi and Dicta, § 676, p. 4589.) Nevertheless, it is often difficult to draw hard lines between holdings and dicta. (See Note, *Dictum Revisited* (1952) 4 Stan.L.Rev. 509.) The basic formula is to take account of facts treated by the judge as material and determine whether the contested opinion is based upon them. (*Achen* v. *Pepsi-Cola Bottling Co.* (1951) 105 Cal.App.2d 113, 124 [233 P.2d 74].)

In the *San Mateo* decision the distinction between holding and dictum is complicated by the fact that multiple cases and comprehensive contract proposals were at issue. (*San Mateo City School Dist.* v. *Public Employment Relations Bd.*, *supra*, 33 Cal.3d at p. 853.) The Supreme Court did not adopt a narrow holding which finally resolved the issue at hand, but rather provided broad answers to the questions raised by all parties with the intention that on remand PERB could provide more specific holdings "consistent with the views expressed." (*Id.*, at p. 867.)

■ With this background in mind, we conclude that the part of the opinion quoted above that applies Government Code section 3540 to Education Code section 45113 is a holding for two reasons. First, the Supreme Court's analysis of section 45113 was relevant to material facts. The Healdsburg contract proposal at issue in *San Mateo* contained disciplinary provisions for classified employees that included "a four step grievance procedure culminating in 'final and binding arbitration'. . . . of all disciplinary disputes arising from the agreement." (*California Sch. Employees Assn.* v. *Healdsburg Union High Sch. Dist. and Healdsburg Union Sch. Dist.* (Jan. 5, 1984) PERB Dec. No. 375, 8 PERC ¶ 15021, at p. 148, on remand, fn. omitted.) A central issue on remand was whether Education Code section 45113 precluded the good faith negotiation of these provisions, the exact issue opined on by the Supreme Court. (See *Id.*, at pp. 148-150, *San Mateo City School Dist.* v. *Public Employment Relations Bd.*, *supra*, 33 Cal.3d at p. 866.) Therefore, the opinion of the Supreme Court regarding the conflict between Education Code section 45113 and the EERA created Government Code section 3540 was a holding because it was based upon material facts before the Supreme Court. (See *Achen* v. *Pepsi-Cola Bottling Co.*, *supra*, 105 Cal.App.2d at p. 124.)

■ ■ In addition, even when part of an opinion is not relevant to material facts, if it is responsive to an argument raised by counsel and probably intended for guidance of the court and attorneys upon a new hear-

ing, "it probably cannot be put aside as mere dictum." (*Paley* v. *Superior Court* (1955) 137 Cal.App.2d 450, 460 [290 P.2d 617]; cf. *Chamberlain Co.* v. *Allis-Chalmers Mfg. Co.* (1946) 74 Cal.App.2d 941, 943 [170 P.2d 85]; *People's Lumber Co.* v. *Gillard* (1907) 5 Cal.App. 435, 439 [90 P. 556].) Clearly *Paley* is applicable here. The Supreme Court was responding to an "objection" of the Healdsburg districts, and the cases before the court were "remanded for further proceedings consistent with the views expressed . . . ." (*San Mateo City School Dist.* v. *Public Employment Relations Bd., supra,* 33 Cal.3d at pp. 866-867.)

■ We conclude that the *San Mateo* analysis of Education Code section 45113 and Government Code section 3540 constituted a holding, and is binding on this court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; *Wall* v. *Sonora Union High Sch. Dist.* (1966) 240 Cal.App.2d 870, 872 [50 Cal.Rptr. 178].)

■ Even if properly characterized as dictum, statements of the Supreme Court should be considered persuasive. (See *Nolan* v. *Transocean Air Lines* (1961) 365 U.S. 293, 296 [5 L.Ed.2d 571, 573, 81 S.Ct. 555].)

The amicus brief of the California Public Employment Relations Board responds that the Supreme Court opinion, whether a holding or dictum, is inapposite here. The rationale of the amicus brief is that the specific disciplinary grievance arbitration proposal before the Supreme Court may have prevented employees from having any hearing at all, binding arbitration or otherwise, on their discharge or discipline. The opinion of the court was therefore limited in scope to the conflict between this proposal of the California School Employees Association (CSEA) and the absolute right to a hearing provided for by Education Code section 45113. This speculation, based on an argument that the California Public Employment Relations Board filed with the court, is inconsistent with the treatment of the general issue by PERB on remand. PERB noted that CSEA's proposal "require[d] binding arbitration of all disciplinary disputes arising from the agreement." (*California Sch. Employees Assn.* v. *Healdsburg Union High Sch. Dist. and Healdsburg Union Sch. Dist., supra,* 8 PERC at p. 148.) The right to a hearing was not in issue. We therefore conclude that the Supreme Court was upholding the requirement of a "conclusive" hearing by the governing board, the same right that is at issue in the instant case.

*Meaning of the Term Conclusive*

Despite the clear language of *San Mateo*, on remand PERB decided that there was no conflict between Education Code section 45113 and a binding

arbitration agreement similar to the instant one. Consequently, we now consider the rationale articulated by counsel and PERB in defense of their position. (See *Id.*)

It is contended that the Legislature, in providing that "the governing board's determination of the sufficiency of the cause for disciplinary action shall be conclusive" (Ed. Code, § 45113), solely intended to limit judicial review. (See *California Sch. Employees Assn.* v. *Healdsburg Union High Sch. Dist. and Healdsburg Union Sch. Dist., supra,* 8 PERC at p. 149.) Two lines of argument are offered to support this contention, to wit: (1) the California Supreme Court has interpreted "conclusive" only to preclude judicial review in a similar context in Education Code section 44949, and (2) no legislative intent to bar binding arbitration existed when the word conclusive was added to the predecessor of Education Code section 45113 because school board delegation of binding arbitration was unlawful at the time. In our opinion these arguments do not survive critical analysis.

To support the argument that the term conclusive was solely intended to limit judicial review, the Union analogizes to the judicial interpretation of the term conclusive in Education Code section 44949, which incorporated earlier Education Code sections 13443 and 13444, and asks us to apply that interpretation to section 45113.[4] This argument is duplicative of that in *California School Employees Assn.* v. *Healdsburg Union High Sch. Dist. and Healdsburg Union Sch. Dist., supra,* 8 PERC at pp. 149-150, where it was opined that ". . . the California Supreme Court has unambiguously resolved the question as to what the Legislature intended [conclusive] to mean . . . . [¶] In the words of the *Griggs* court: '. . . [W]here there is evidence to support the board's findings of fact and where the cause for dismissal found by the board can reasonably be said to relate to the "welfare of the schools and pupils thereof," *the reviewing court may not consider whether the facts found are sufficiently serious to justify dismissal.*'" (Quoting *Griggs* v. *Board of Trustees* (1964) 61 Cal.2d 93, 96 [37 Cal.Rptr. 194, 389 P.2d 722], italics added.) A number of other decisions have followed the *Griggs* lead. (See *Turner* v. *Board of Trustees* (1976) 16 Cal.3d 818, 823 [129 Cal.Rptr. 443, 548 P.2d 1115]; *Lindros* v. *Governing Bd. of the Torrance Unified School Dist.* (1973) 9 Cal.3d 524, 533-534 [108 Cal.Rptr. 185, 510 P.2d 361]; *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575, 586-587 [100 Cal.Rptr. 16, 493 P.2d 480].)

---

[4]Education Code section 44949 prescribes a general procedure for dismissal for probationary school employees, as did its predecessors, Education Code sections 13443 and 13444. Section 13444 was repealed in 1965 and incorporated in pertinent part into section 13443. Section 13443 was recodified as Education Code section 44949 in 1976. (See *California Sch. Employees Assn.* v. *Healdsburg Union High Sch. Dist. and Healdsburg Union Sch. Dist., supra,* 8 PERC at pp. 149, 156, fn. 32.)

The argument continues that this judicial construction of the predecessors to section 44949 should be central to evaluating the legislative intent of any subsequent Education Code legislation utilizing the word conclusive in a similar context. (See *California Sch. Employees Assn.* v. *Healdsburg Union High Sch. Dist. and Healdsburg Union Sch. Dist.,* supra, 8 PERC at p. 150.) ■ " ' "[W]hen legislation has been judicially construed and a subsequent statute on the same or an analogous subject is framed in the identical language, it will ordinarily be presumed that the Legislature intended that the language as used in the later enactment would be given a like interpretation." ' " (*Kaplan's Fruit and Produce Co.* v. *Superior Court* (1979) 26 Cal.3d 60, 73 [160 Cal.Rptr. 745, 603 P.2d 1341], quoting *Belridge Farms* v. *Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551, 557 [147 Cal.Rptr. 165, 580 P.2d 665].)

The *Kaplan* method of deriving legislative intent, however, is inapposite to the instant case. The prerequisite for *Kaplan* to apply is that legislation be adopted with "identical language" to that "judicially construed" in an existing statute. ■ Here, though Education Code section 13583 (the predecessor to section 45113) was amended in 1965 to include the word conclusive, wording differences between it and similar Education Code sections 13443 and 13444 as they existed before 1965 were significant. Prior to 1965 section 13444 in part read: "The determination of the board as to the sufficiency of cause for dismissal shall be *conclusive,* but the cause shall relate solely to the welfare of the schools and the pupils thereof. The determination of the board as to the *sufficiency of the cause for dismissal shall not be subject to judicial review.*" (*Horner* v. *Board of Trustees* (1964) 61 Cal.2d 79, 82 [37 Cal.Rptr. 185, 389 P.2d 713], italics added.)[5] In 1964 the leading case of *Griggs* v. *Board of Trustees, supra,* 61 Cal.2d 93, 96, directly quoted this part of section 13444, only reversing the order of the two sentences. Not surprisingly, the court concluded that "section 13444 of the Education Code specifically limits the scope of judicial review. . . ." (*Ibid.*) The word conclusive was completely unnecessary to the *Griggs* holding. As a result, the Legislature had no judicially construed use of the term conclusive in a similar context in the Education Code prior to the introduction of that term by amendment to the predecessor to Education Code section 45113 in 1965. (Stats. 1965, ch. 1663, § 5, p. 3774.)

The cases cited by the Union which construe "conclusive" after 1965 are irrelevant to the determination of legislative intent in 1965, the year the pertinent verbage was first adopted. (*Ibid.*)

---

[5]Education Code section 13443 (Stats. 1961, ch. 2063, § 1, p. 4290) used essentially the same language as section 13444.

In any event, the post-1965 cases fail to support the contention that the legislative intent was *solely* to preclude judicial review. *Turner, Lindros* and *Bekiaris* did analyze language essentially identical to that of Education Code section 45113. (See *Turner* v. *Board of Trustees, supra*, 16 Cal.3d at p. 823; *Lindros* v. *Governing Bd. of the Torrance Unified School Dist., supra*, 9 Cal.3d at p. 532; *Bekiaris* v. *Board of Education, supra*, 6 Cal.3d at pp. 586-587.) However, *Lindros* and *Bekiaris* held only that "conclusive" meant no judicial review, not that conclusive *solely* meant no judicial review. A holding that the phrase "the governing board's determination of the sufficiency of cause for disciplinary action shall be conclusive" means no judicial review, when that is the issue before the court, does not preclude a legislative intention that conclusive *also* means that the governing board cannot delegate its responsibility to binding arbitration.

■ The Union contends independently that in 1965 when the Legislature first amended the predecessor to Education Code section 45113 to state that "the governing board's determination . . . shall be conclusive" (Stats. 1965, ch. 1663, § 5, p. 3774), they had no legislative intent to preclude binding arbitration. At that time public school employers were precluded from entering into binding agreements with labor organizations representing school employees. The Union concludes that a statutory clause prohibiting an agreement providing for binding arbitration of collective agreement disputes would therefore have been "anomalous and unnecessary." (*California Sch. Employees Assn.* v. *Healdsburg Union High Sch. Dist. and Healdsburg Union Sch. Dist., supra*, 8 PERC at p. 149.)

Actually, the status of collective bargaining for public employee organizations in 1965 was both in flux and less than clear. In adopting the Brown Act of 1961 (Stats. 1961, ch. 1964, § 1, pp. 4141-4143) California had become one of the first states in the nation to recognize in a general statute the emerging concept of public employee bargaining, although prior to that in California there were a number of collective bargaining agreements in effect between local governments and employee organizations. (Grodin, *Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts* (1972) 23 Hasting L.J. 719, 719, 724, fn. 27.) The Brown Act, while limited to the right of employee organizations to "meet and confer" with public employers, "left many questions unanswered and provided no machinery for interpretation. . . ." (*Id.*, at p. 719.)

The Winton Act of 1965 was similar to the Brown Act except that it specifically dealt with the employer-employee relations within the public school systems of California. (Stats. 1965, ch. 2041, § 1, pp. 4660-4663.) The Winton Act left many important questions unanswered as well. For

instance, the Winton Act did not define the critical term "meet and confer" until a 1970 amendment. (Stats. 1970, ch. 1412, § 3, p. 2681.) It was, therefore, unclear whether this language was to have the same meaning as under the Brown Act, or if instead the school board's duty was somehow broader than it had previously been. (Note, *Collective Bargaining and the California Public Teacher* (1969) 21 Stan.L.Rev. 340, 357.)

The Winton Act also invited other legislative enactments to define its limits. It stated that: "Nothing contained herein shall be deemed to supersede other provisions of this code . . . which establish and regulate tenure or a merit or civil service system or which provide for other methods of administering employer-employee relations." (Stats. 1965, ch. 2041, § 2, p. 4661.)

Against this backdrop it is not difficult to understand why the Legislature may have been especially careful to limit the possible effects of the Winton Act in other 1965 legislation regarding public school employees. This is a reasonable explanation of the wording of the classified school district employees section, amended in 1965 to read: "the governing board's determination of the sufficiency of the cause for disciplinary action shall be conclusive." (Stats. 1965, ch. 1663, § 5, p. 3774.) Perhaps the most fundamental objection to the granting of collective bargaining rights to teachers has been the concept of public sovereignty over education. An underlying principle is that the school board cannot delegate this function. (Note, *Collective Bargaining and the California Public Teacher, supra,* 21 Stan.L.Rev., at p. 372.) We believe that the legislative intent in requiring that "the governing board's determination . . . be conclusive" embraced these concerns as well as a limitation on judicial review.

In contrast, if the Legislature had intended solely to restrict judicial review, as the Union contends, they could have done so explicitly by copying Education Code sections 13443 and 13444 as they existed until 1965.[6] The California Legislature did not imitate these existing code sections, but instead employed the more general concept that governing board determinations shall be conclusive.

### Remaining Contentions

█ The Union also contends, in their reply brief, that the dismissal remedies of a hearing before the governing board and binding arbitration

---

[6]For example, Education Code section 13443 stated that: "No right of judicial review shall exist for such employee on the question of the sufficiency of the reasons for dismissal." (Stats. 1961, ch. 2063, § 1, p. 4290.)

are independent. Based on this theory, even if the governing board's determination is conclusive, that neither establishes precedent for nor precludes independent evaluation by a neutral arbitrator of a separate grievance based on the same substantive facts. This contention is based an analogy to Title VII of the Civil Rights Act. Title VII permits separate de novo review of statutory violations even though similar or duplicative contractual rights are submitted to binding grievance-arbitration pursuant to a collective bargaining agreement. (*Alexander* v. *Gardner-Denver Company* (1974) 415 U.S. 36, 47-49 [39 L.Ed.2d 147, 157-159, 94 S.Ct. 1011].)

We believe that for the dismissal of a classified school district employee the requirement of Education Code section 45113 that the governing board's determination be "conclusive" is inconsistent with the suggestion that a separate and independent right to final and binding arbitration also exists.

Title VII, which provides extraordinary protection of the extremely important right to be free from discrimination, is inapplicable here. "In the Civil Rights Act . . . Congress indicated that it considered the policy against discrimination to be of the 'highest priority.' [Citations.] Consistent with this view, Title VII provides for consideration of employment-discrimination claims in several forums. . . . Moreover, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable . . . statutes." (*Id.,* at pp. 47-48 [39 L.Ed.2d at p. 158].) In comparison, the policy favoring public employer-employee collective bargaining is not of the highest magnitude.[7]

The legislative history of the EERA as expressed in Government Code section 3540 indicates that when Education Code provisions and collective bargaining rights conflict the latter must give way. (See *San Mateo School Dist.* v. *Public Employment Relations Bd., supra,* 33 Cal.3d at pp. 864-866.) Moreover, the Supreme Court has recently held that the "intent of section 3540 is to preclude contractual agreements which would alter [certain] statutory provisions," including Education Code section 45113. (*Id.,* at p. 866.) Pursuant to these statutes, discussed in detail above, the potential double remedy of subjecting a conclusive governing board determination to the subsequent final and binding arbitration of the general collectively bargained for agreement simply was neither authorized nor intended by the California Legislature.

---

[7]The purpose of the EERA is "to promote the improvement of personnel management and employer-employee relations within the public school systems. . . ." (Gov. Code, § 3540.)

The parties and amicus briefs raise several other issues on appeal which we will not discuss. The most important of these concern whether or not the Union waived its right to arbitrate because of untimeliness, and whether or not arbitration is as protective of employees' rights as is a hearing before the governing board. We leave these questions because our holding makes resolving them unnecessary.

## DISPOSITION

The judgment is affirmed.

Kaufman, J., and Rickles, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 21, 1985. Bird, C. J., was of the opinion that the petition should be granted.