Filed 8/29/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GUILLERMO AVILES-RODRIGUEZ, | B278863 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC599158) |
| v. | |
| LOS ANGELES COMMUNITY COLLEGE DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara A. Miers, Judge.  Reversed.

Knapp, Petersen & Clarke, André E. Jardini, Gwen Freeman, and K.L. Myles for Plaintiff and Appellant.

Wood, Smith, Henning & Berman, Stacey F. Blank, and Shannon M. Benbow for Defendant and Respondent.

_____

## INTRODUCTION

This case calls upon us to decide an issue previously addressed, though not definitively decided, by our Supreme Court. In *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479 (*Romano*), the court held that under the Fair Employment and Housing Act (FEHA), Government Code section 12900 et seq.,[1] a party alleging that a discriminatory act led to the termination of his or her employment has until one year from the date the employment terminated to file an administrative claim. *Romano* involved an at-will employee; the instant case involves a professor denied tenure. These factual distinctions arguably are of legal significance. Nevertheless, based on our Supreme Court's criticism of a United States Supreme Court case involving a denial of tenure and its disapproval of a California case deemed analogous to a denial of tenure, we interpret the court's reasoning as a directive to apply the holding of *Romano* to the instant case.

Appellant Guillermo Aviles-Rodriguez previously was employed by respondent Los Angeles Community College District (LACCD) as a professor. On November 21, 2013, a tenure review committee voted to deny appellant tenure. Following a February 26, 2014 review and final vote by the Board of Trustees, appellant received written notice on March 5 that tenure had been denied. Before receiving notice of the Board's final decision, appellant initiated a grievance procedure, the third and final step of which was denied by a grievance review committee on May 21, 2014. That same month appellant allegedly contacted the Department of Fair Employment and Housing (DFEH) to discuss

---

[1]     All further statutory citations are to the Government Code, unless otherwise indicated.

the filing of a claim alleging racial discrimination including, but not limited to, the denial of tenure, and was advised that he had until one year from the last day of his employment to file a complaint with the DFEH.  Appellant's employment terminated June 30, 2014, the last day of the academic year, and on June 29, 2015, he filed his complaint with DFEH.  After being issued a right-to-sue letter, appellant filed the instant action against LACCD.  Following several demurrers, appellant filed his third amended complaint (TAC), the operative complaint.  The TAC alleged a single cause of action under the FEHA against LACCD for denial of tenure and termination based on racial discrimination.

LACCD demurred to the TAC, arguing that appellant's claim was barred because he failed to file his DFEH complaint within one year "from the date upon which the alleged unlawful practice . . . occurred."  (§ 12960, subd. (d).)  It asserted the trigger date for the commencement of the one-year period was the date tenure was denied.  Relying on *Romano*, appellant argued he had one year from the last day of his employment to file the DFEH complaint.  The trial court sustained the demurrer without leave to amend and ordered the case dismissed.

Were we writing on a blank slate, we might conclude that the one-year limitations period to file a DFEH complaint begins to run on the date the employee is notified of the final tenure decision.  However, although *Romano* did not involve a wrongful termination resulting from the denial of tenure, we read its discussion of both federal and state cases involving the denial of tenure or analogous facts as a clear directive that its holding should be applied here.  In light of *Romano*, we conclude the one-year limitations period for appellant to file a timely DFEH

3

complaint began to run from the last day of his employment. As he filed his DFEH complaint within that period, his claim was timely. Accordingly, we reverse the judgment dismissing the TAC.

**FACTUAL BACKGROUND & PROCEDURAL HISTORY**

On October 27, 2015, appellant, an Hispanic man of Mexican heritage, filed a complaint for damages alleging causes of action against LACCD for (1) employment discrimination (failure to grant tenure - race) in violation of the FEHA; (2) employment discrimination (termination - race) in violation of the FEHA; and (3) discrimination [in] violation of public policy.[2] On January 13, 2016, appellant filed a first amended complaint (FAC) alleging a single cause of action for employment discrimination (termination - race) in violation of the FEHA. In the cause of action for wrongful termination, the FAC alleged that "LACCD has engaged in endemic race based employment discrimination, affecting Plaintiff, and resulting in his denial of tenure." It further alleged that "LACCD has engaged in endemic race based employment discrimination, affecting Plaintiff, and resulting in his termination from employment."

LACCD demurred to the FAC on the ground that appellant had failed to exhaust his administrative and judicial remedies. After the trial court sustained the demurrer with leave to amend, appellant filed a second amended complaint (SAC). LACCD demurred to the SAC on the ground that the action was barred by

---

[2]     A cause of action for defamation-slander against an individual defendant was later abandoned.

4

the applicable statute of limitations.[3]  It argued that because appellant filed his DFEH complaint more than one year after becoming aware of the decision to deny him tenure, his action was barred under the one-year limitations period in section 12960, subdivision (d).[4]

The trial court sustained the demurrer to the SAC with leave to amend, after determining that the limitations period began to run on November 21, 2013 (the date of the tenure review committee's vote) and that appellant failed to plead facts showing equitable tolling.  Appellant then filed his TAC, the operative complaint.  Similar to the prior amended complaints, the TAC's sole cause of action under the FEHA alleged that "LACCD has engaged in endemic race based employment discrimination, affecting Plaintiff, and resulting in his denial of tenure . . . [¶] . . . [and] in his termination from employment."  The TAC re-alleged that appellant was denied tenure on November 21, 2013 due to his Mexican ethnicity.  It further alleged that on November 25, 2013, Deborah Paulsen, chair of the art department, directed appellant in writing to refrain from

---

[3]    LACCD reiterated its argument on the exhaustion of administrative and judicial remedies in subsequent demurrers, but the trial court did not rule on the issue, and LACCD does not raise it on appeal.

[4]    LACCD did not specify when the one-year limitations period began to run.  Rather, it argued that appellant became aware of the tenure committee's decision -- and the statute of limitations began to run -- no later than February 18, 2014, when appellant initiated his grievance contesting the decision, or no later than February 26, 2014, when LACCD's Board of Trustees "reviewed the decision for a final vote."

raising any questions about the tenure decision.  Appellant received written notice of the Board of Trustees' final tenure decision on March 5, 2014, and his employment terminated the last day of the academic year, June 30, 2014.

The TAC alleged that appellant grieved the tenure decision, and his grievance was finally denied May 21, 2014.  It further alleged that appellant made a "Pre Complaint Inquiry with the DFEH in May of 2014 and was provided with an advisor, Elida Ramirez ('Ramirez') for the express purpose of assisting Plaintiff to properly and timely assert his claim.  Plaintiff explained the basis for his complaint of discrimination, including but not limited to the decision to deny him tenure.  Ramirez expressly told Plaintiff that he had one year from his last day of employment to file his DFEH complaint, or June 30, 2015."  The TAC alleged that appellant filed his DFEH complaint on June 29, 2015.

LACCD demurred to the TAC, arguing that the action was barred because appellant had failed to file a timely DFEH complaint and had not pleaded facts sufficient to support equitable tolling of the statute of  limitations.  According to LACCD, as set forth in the TAC, appellant was employed under a third contract of employment covering the 2012 through 2014 academic years.  Pursuant to Education Code section 87609, with respect to an employee under a third contract, a community college district has only two options:  (1) to employ the probationary employee as a tenured employee for all subsequent academic years or (2) to not employ the probationary employee as a tenured employee.  Here, the TAC alleged that the decision to deny tenure was made November 21, 2013, and appellant was aware of the tenure decision as of November 25, 2013.  LACCD

6

asserted that the adverse employment action was the denial of tenure. Because appellant was aware of the denial of tenure as of November 25, 2013, LACCD argued he had one year from that date to file his DFEH complaint.[5]

LACCD further contended that appellant's claim was not saved by equitable tolling. Although LACCD acknowledged that misrepresentations by the DFEH may equitably toll the time for filing a complaint, it argued that appellant had failed to plead that he diligently pursued his claim after receiving the allegedly erroneous advice from the DFEH advisor.

Relying on the Supreme Court's decision in *Romano*, appellant argued the statute of limitations for filing his administrative claim did not begin to run until the date his employment ended. He further argued that even if the statute began to run before that date, he was entitled to equitable tolling, as he reasonably relied on the advice of DFEH advisor Ramirez to believe he had until June 30, 2015 to file his DFEH complaint.

---

[5] LACCD did not address Education Code section 87610, subdivision (b). That section provides: "The governing board shall give written notice of its decision under Section 87609 and the reasons therefor to the employee on or before March 15 of the last academic year covered by the existing contract. The notice shall be by registered or certified mail to the most recent address on file with the district personnel office. Failure to give the notice as required to a contract employee under his or her third consecutive contract shall be deemed a decision to employ him or her as a regular employee for all subsequent academic years." (Ed. Code, § 87610, subd. (b).) Thus, under LACCD's interpretation, the statute of limitations would begin to run before written notice was given and before the decision to deny tenure had legal effect.

7

On September 22, 2016, the trial court issued a ruling sustaining the demurrer to the TAC without leave to amend and dismissing the action. In its decision, the court ruled that appellant's failure to file his DFEH complaint "within one year from denial of tenure in November 2013" barred his claim for unlawful "'discharge'" under the FEHA. The court distinguished *Romano* on factual and legal grounds. It also rejected his claim of equitable tolling.

Judgment dismissing the TAC was entered October 26, 2016. Appellant timely appealed.

**DISCUSSION**

Appellant contends the trial court erred in sustaining the demurrer to the TAC. Specifically, he argues that the court misapplied the applicable statute of limitations and failed to consider his allegations of equitable tolling. We review a judgment of dismissal entered after an order sustaining a demurrer de novo. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) "We must take the allegations of the operative complaint as true and consider whether the facts alleged establish [appellant's] claim is barred as a matter of law." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.) As explained below, under the reasoning in *Romano*, we conclude appellant timely filed his DFEH complaint when he did so within one year of the last day of his employment, June 30, 2014.

In the sole cause of action under the FEHA, appellant alleged that he was denied tenure and his employment was terminated as a result of illegal discrimination. The filing of a DFEH complaint within one year of "the date upon which the

8

alleged unlawful practice . . . occurred" is a condition precedent to the filing of a civil action.  (§ 12960, subd. (d).)  Appellant contends that under the reasoning of *Romano*, the one-year limitations period to file a DFEH complaint for wrongful denial of tenure resulting in employment termination begins to run from the last day of employment.  LACCD contends the one-year limitations period began to run when "the decision to deny tenure was made," as the tenure decision inevitably resulted in the termination of appellant's employment.[6]

In selecting the date when the statute of limitations commences, we are mindful of the public policy animating the FEHA.  The purpose of the FEHA is to "safeguard the employee's right to seek, obtain, and hold employment without experiencing discrimination." (*Romano, supra,* 14 Cal.4th at p. 493, citing §§ 12920, 12921.)  "The FEHA itself requires that we interpret its

---

[6]     Before the trial court, LACCD argued that the one-year limitations period set forth in section 12960 began to run either from the date of the tenure review committee's vote (November 21, 2013) or the date appellant became aware of the vote.  It characterized the latter as either when appellant spoke with Paulsen about the committee's vote (November 25, 2013) or when he initiated his grievance contesting the committee's tenure decision (February 18, 2014).  In its appellate brief, LACCD argued the FEHA statute of limitations began to run from the date of the tenure committee's vote ("November 2013").  During oral argument, LACCD argued for the first time that the statute began to run from the date the tenure decision became final, identifying that date as May 21, 2014, when appellant's grievance was finally denied by the grievance review committee.  At no time did LACCD suggest the statute began to run on March 5, 2014, the date appellant was notified of the Board's final tenure decision.

9

terms liberally in order to accomplish the stated legislative purpose." (*Ibid.*, citing § 12993, subd. (a).) "'This liberal construction extends to interpretations of the FEHA's statute of limitations.'" (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 108 (*McDonald*), quoting *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 819.)

In *Romano*, our Supreme Court was asked to determine when the one-year limitations period begins to run for wrongful termination of an at-will employee. The employer argued the statute of limitations should run from the date the employee was notified he would be terminated; the employee argued it should run from the date his employment was terminated. In a unanimous opinion authored by Chief Justice George, in which Justice Kennard separately concurred, our Supreme Court concluded that the purpose of the FEHA would be better served by interpreting the statute of limitations on a wrongful termination claim to run from "the date of actual termination, and not from notification of termination." (*Romano, supra*, 14 Cal.4th at p. 494.) The court determined that the remedial purpose of the FEHA would be furthered if the statute of limitations began to run on the latter date, as many employees do not begin to pursue their legal remedies for unlawful discharge until after a dismissal has occurred. (*Ibid.*, citing *Ross v. Stouffer Hotel Co. (Hawai'i) Ltd.* (1994) 76 Hawai'I 454 [879 P.2d 1037, 1045] (*Ross*).) Interpreting the limitations period to begin running from the date of actual termination, the court reasoned, would "promote the resolution of potentially meritorious claims on the merits." (*Romano, supra*, at p. 494.)

The court concluded that such an interpretation would not impose an undue burden on employers by forcing them to defend

stale claims because the period between notification and termination usually is short. (*Romano*, *supra*, 14 Cal.4th at p. 494, citing *Ross*, *supra*, 879 P.2d at p. 1045.) The court further observed that its interpretation had "the obvious benefit of simplicity," as, inter alia, "the date of actual termination is a date that in most cases is subject to little dispute." (*Ibid*.) Finally, the court noted, a contrary interpretation -- "that the statute of limitations on a claim under the FEHA runs from the time of notification of termination [--] would promote premature and potentially destructive claims, in that the employee would be required to institute a [DFEH] complaint . . . while he or she still was employed, thus seeking a remedy for a harm that had not yet occurred." (*Id*. at p. 494.)

Although *Romano* did not involve an employment termination resulting from the denial of tenure, the court discussed at length both federal and state decisions involving a denial of tenure or circumstances analogous to tenure denial. It first addressed the United States Supreme Court's decision in *Delaware State College v. Ricks* (1980) 449 U.S. 250 (*Ricks*), a case involving an analogous statute of limitations under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). There, a professor was denied tenure, but given a one-year "'terminal'" contract. In his subsequent suit alleging racial discrimination, the Third Circuit held that the time for filing an administrative complaint ran from the date the professor's employment ended. Reversing, the Supreme Court held the time ran from the date of the alleged unlawful employment practice, viz., the denial of tenure. Noting that termination of employment at the end of the one-year contract was merely the "delayed, but inevitable, consequence of the denial of tenure" (*Ricks*, *supra*, at pp. 257-

11

258), the court held that the date commenced to run "when the tenure decision was made and Ricks was notified." (*Id*. at p. 259.)

*Romano* addressed the *Ricks* holding. While acknowledging the distinction between a faculty member notified of the denial of tenure and an at-will employee notified of an impending discharge, our Supreme Court expressly "question[ed] the reasoning of the high court's decision[]" and unequivocally signaled its unwillingness to follow *Ricks*. (*Romano*, *supra*, 14 Cal.4th at p. 497.) It noted that because the FEHA itself defines a discriminatory discharge as an unlawful employment practice, "it would be anomalous for us to conclude that the limitations period for that unlawful practice begins to run prior to discharge." (*Ibid*.) More important, the court found the reasoning of *Ricks* "not . . . persuasive as applied to the FEHA." Observing that "employees should not be required to bring a lawsuit before discharge," the court concluded that the rule announced in *Ricks* would "'increase the number of unripe and anticipatory lawsuits in the . . . courts -- lawsuits that should not be filed until some concrete harm has been suffered, and until the parties, and the forces of time, have had maximum opportunity to resolve the controversy.'" (*Romano*, *supra*, 14 Cal.4th at pp. 497-498, quoting *Chardon v. Fernandez* (1981) 454 U.S. 6, 9 (dis. opn. of Brennan, J.).)

*Romano* then examined a California case, *Regents of University of California v. Superior Court* (1995) 33 Cal.App.4th 1710 (*Regents*). There, a surgical resident was told she would have to repeat the third year of her residency or leave the program, although she would be permitted to work for one year in a laboratory position before deciding whether to repeat the year of residency. The plaintiff worked in the laboratory for the next

12

year, declined to repeat her third year, left the program, and shortly thereafter filed a DFEH claim alleging sex discrimination. Finding the case "analogous to the failure to qualify for tenure in *Ricks*," the appellate court concluded that as the plaintiff was aware her failure to qualify for fourth year residency would result in the termination of her employment at the close of the next year, "termination of employment was a 'delayed, but inevitable, consequence' of . . . not repeating a year in . . . the residency program." (*Regents*, *supra*, at p. 1717.) Accordingly, under the reasoning of *Ricks*, the statute of limitations for filing her DFEH complaint ran from the date she was told she would be required to repeat her third year.

*Romano* expressly disapproved *Regents*: "[W]e are not persuaded by this authority that the limitations period under the FEHA for an actual discharge should begin to run at the point the employee is notified that his or her employment will be terminated, and any contrary assertion in the *Regents* case is disapproved." (*Romano*, *supra*, 14 Cal.4th at pp. 499-500.) Later, the court reiterated its disapproval of *Regents*'s holding that "the statute of limitations for claims under the FEHA begins to run when the adverse employment decision is communicated to the employee, not at termination." (*Id*. at p. 502.)

LACCD contends that denial-of-tenure cases are factually and legally distinguishable from nontenure cases, noting, inter alia, that unlike the private employer in *Romano*, following the denial of tenure, LACCD is statutorily prohibited by Education Code section 87609 from employing appellant as a faculty

member.[7]  We acknowledge that because *Romano* was not a denial-of-tenure case, the court's statements about *Ricks* and *Regents* were not necessary to its holdings.  However, "[e]ven if properly characterized as dictum, statements of the Supreme Court should be considered persuasive.  [Citation.]" (*United Steelworkers of America v. Board of Education* (1984) 162 Cal.App.3d 823, 835.)  "To say that dicta are not controlling [citation] does not mean that they are to be ignored; on the contrary, dicta are often followed." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 511, p. 575.)  As one appellate court has advised:  "Generally speaking, follow dicta from the California Supreme Court." (*Hubbard v. Superior Court* (1997) 66 Cal.App.4th 1163, 1169, citing *People v. Trice* (1977) 75 Cal.App.3d 984, 987.)  This is especially true when, as here, the Supreme Court has reached well beyond the holding necessary to its opinion to express its broader view.  *Romano* could easily have distinguished *Ricks* and *Regents* as cases involving denial of tenure or analogous circumstances and stopped there.  Instead, it went on to question the reasoning of the former decision and to expressly disapprove the latter.[8]

---

[7]     During oral argument, LACCD acknowledged that appellant could be employed in a nonfaculty position.  (See also Ed. Code, § 87600 [Education Code section 87609 applies only to employment in "faculty positions"].)

[8]     As noted, Justice Kennard joined the *Romano* opinion and concurred in the result.  She suggested, however, that the court's discussion of *Ricks* did "not imply that employment terminations resulting from denial of tenure would necessarily be subject to the holdings announced in this nontenure case." (*Romano*, *supra*,

Here, assuming the denial of tenure was discriminatory, the harm resulting from that wrongful act was, as alleged in the TAC, the termination of appellant's employment. While the denial of tenure set off the chain of events resulting in the termination of appellant's employment, the resulting harm occurred when his employment actually ended. (See *Romano*, *supra*, 14 Cal.4th at p. 494 [no harm has occurred while employee still employed].) Moreover, even if, as in *Regents*, the termination of appellant's employment constituted a ""delayed, but inevitable, consequence"" of the decision to deny tenure, the *Romano* court expressly disapproved using the date of notification of termination as the date on which the one-year limitations period begins to run. (*Romano*, at pp. 499, 502.)

We acknowledge that both case law and rational policy considerations may militate in favor of a rule that in cases involving an allegedly discriminatory denial of tenure, the statute of limitations for filing an administrative complaint runs from the date the employee is notified of the final tenure decision. Had our Supreme Court in *Romano* merely distinguished denial-of-tenure cases from the case before it, we might well adopt such a rule. But we cannot ignore the language of *Romano* or the fact that our highest court expressly questioned and unequivocally criticized cases adopting that approach. Until our Supreme Court indicates otherwise, we take the language of *Romano* as a

14 Cal.4th at p. 503 (conc. op. Kennard, J.).) To the extent the discussion of *Ricks* is dicta, we agree nothing in the opinion would "necessarily" bind the court in a case alleging termination resulting from a discriminatory denial of tenure. As to the reasoning underlying the discussion of *Ricks*, we do not see how the implications for denial-of-tenure cases can be avoided.

15

directive and apply its reasoning to the facts before us. Under that reasoning, the one-year limitations period set forth in section 12960 began to run on the last day of appellant's employment with LACCD. As appellant filed his DFEH complaint within one year of that date, it was timely, and the trial court erred in sustaining LACCD's demurrer to the TAC.[9]

## DISPOSITION

The judgment of dismissal is reversed. Appellant is awarded his costs on appeal.

**CERTIFIED FOR PUBLICATION.**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

---

[9]     In light of our holding that the statute of limitations began to run on the last day of appellant's employment, we need not address his claim of equitable tolling.